## INTERNATIONAL STEEL CO. *v.* REVIEW BOARD OF INDIANA EMPLOYMENT SECURITY DIVISION.

[No. 869A149. Filed December 10, 1969. Rehearing denied January 13, 1970.]

*Arthur R. Donovan, Harry P. Dees, Joseph A. Yocum* and *Kahn, Dees, Donovan & Kahn,* of counsel, all of Evansville, for appellant.

*Theodore L. Sendak,* Attorney General, *William S. McMaster,* Deputy Attorney General, for appellee, Review Board of the Indiana Employment Security Division, *Winfield K. Denton, Gary L. Gerling, Rodney H. Grove* and *Denton, Gerling & Grove,* of counsel, all of Evansville, for appellees, Avid A. Abott, et al.

PFAFF, C.J.—Appellees, Avid A. Abott and others, originally brought this action seeking to obtain benefits under the Indiana Employment Security Act by reason of their involuntary cessation of employment with appellant corporation on February 11, 1967. In February 1967, appellees filed official Form No. 618, "Determination of Eligibility During Labor Dispute," with the Indiana Employment Security Division, and the matter was referred to an appeals referee. Subsequent to a hearing before the appeals referee, on August 16, 1967, it was initially determined that appellees-claimants were ineligible for waiting period and benefit rights from February 11, 1967, through March 11, 1967, because claimants' unemployment was due to a work stoppage that existed because of a labor dispute. Thereafter, on July 1, 1968, subsequent to appellees' appeal to the Review Board, the decision of the appeals referee was reversed and the appellees were awarded benefits. The appellant, International Steel Company, then appealed to this court, alleging that the decision of the Review Board is contrary to law.

The recent Appellate Court decision in the case of *Williamson Co.* v. *Review Bd. of Indiana Emp. Sec. Div.* (1969),

145 Ind. App. 266, 250 N. E. 2d 612, restated the established rule that "this Court is not at liberty to weigh the evidence and that we must accept the facts as found" by the Review Board and other administrative agencies operating pursuant to established standards of administrative review recognized by this court. In *Williamson, supra,* Judge Hoffman conducted an exhaustive review of those instances of exception wherein the court is allowed the liberty of nonadherence to the facts as determined by an administrative agency. After a thorough discussion of prior decisions which established the exceptions to the general rule as stated above, Judge Hoffman, at page 616 of 250 N. E. 2d, in summary set forth those exceptions as follows:

"The reviewing court may reverse the decision of the Review Board if:

"(1) The evidence on which the Review Board based its conclusion was devoid of probative value;

"(2) The quantum of legitimate evidence was so proportionately meager as to lead to the conviction that the finding does not rest upon a rational basis;

"(3) The result of the hearing before the Review Board was substantially influenced by improper considerations;

"(4) There was no substantial evidence supporting the conclusions of the Review Board;

"(5) The order of the Review Board, its judgment or finding, is fraudulent, unreasonable or arbitrary;

"(6) The Review Board ignored competent evidence;

"(7) Reasonable men would be bound to reach the opposite conclusion from the evidence in the record."

In the case at bar, the Review Board, in reversing the appeals referee, concluded as follows:

"STATEMENT OF FACTS: The record is in agreement that the employer is engaged in the custom fabrication of steel at its Evansville, Indiana plant; that the authorized bargaining agent for the employer's production and maintenance workers is the Chauffeurs, Teamsters and Helpers Local Union No. 215, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America; that there was a collective bargaining agreement in effect

between this employer and said union from July 28, 1964, to January 31, 1967 (Exhibit E-1, Tr. p. 29); that in December, 1966, a union representative contacted the employer relative to terminating the existing contract on January 31, 1967, and negotiating terms and conditions of a new agreement; that the first negotiation meeting was scheduled for and held on January 9, 1967; that during succeeding meetings, the issues were discussed and some agreed upon; that a proposal submitted by the employer on February 2, 1967, was unacceptable to the union who then offered a counter proposal (to extend the present agreement 30 days) which was unacceptable to the employer; that after 13 meetings, including the one on February 3, 1967, agreement was reached on some issues but others were yet to be resolved; that the employer notified all concerned parties on February 6, 1967, the plant would be closed on said date until further notice; that at the time the plant was closed, there was a 'heavy workload' with sufficient materials on hand to provide work for all employees; that in agreement with the union, the employer recalled 60 employees on February 20, 1967, and the balance of the approximate 360 production and maintenance employees laid off on February 6, 1967, were recalled on March 8, 1967; that the plant operated in full force until May 3, 1967, when said employees went out on a strike which continued to June 29, 1967; that a new agreement between the employer and union was ratified June 29, 1967, and the claimants herein were recalled to work between July 3, and 10, 1967.

"At the time management decided to close the plant, there had been no work stoppage by employees, no overt actions by employees to curtail production by slowdown tactics, and no irregular attendance by production and maintenance employees during the weeks prior thereto. The record is conclusive in the facts that work was available and that production and maintenance employees had continued working regularly and were ready and available for work.

"The record shows that negotiations between the employer and union representatives continued with meetings on February 14, 1967; March 6, 20; April 6, 18, 19, 25, 26; May 17, 18 and 25, 1967.

"FINDINGS AND CONCLUSIONS: The Review Board finds that a collective bargaining agreement was in effect from July 28, 1964, to January 31, 1967, between the employer herein and Local Union No. 215, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

"It further finds that pursuant to due notice by the union in December, 1966, negotiations for a new agreement were instituted and the first meeting was scheduled for January 9, 1967.

"It further finds that the parties negotiated in good faith throughout 13 meetings held between January 9, 1967, and February 3, 1967, and 12 meetings held subsequent thereto.

"It further finds that the employer after unilaterally deciding an impasse occurred on February 3, 1967, declared a labor dispute existed and closed its plant on February 6, 1967.

"It further finds that good faith negotiations between labor and management do not in or of themselves constitute a a 'labor dispute.'

"It further finds that prior to the time the plant was closed, there was and had been no overt actions by the employees to stop work or slow down production.

"It further finds that the attendance of production and maintenance employees was not shown to be abnormal on or prior to February 6, 1967.

"It further finds that the record is devoid of any showing that the production and maintenance employees had in any manner indicated that they might discontinue working if the employer did not accede to their terms.

"The Review Board concludes that the facts of record show that the bargaining was in a fluid state, no impasse had in fact occurred, and that good faith negotiations continued between representatives of management and labor, therefore a labor dispute did not exist. (See *Bootz Manufacturing Co., Inc.* v. *Review Board, et al.* (1968) 14 Ind. Dec. 473, 237 N. E. 2d 597 [Reh. Den. 238 N. E. 2d 472]).

"It further concludes that the claimants herein became unemployed as of February 6, 1967, through no fault of their own within the meaning of the Indiana Employment Security Act.

"DECISION: The decision of the referee dated July 17, 1968, is hereby reversed this 1st day of July, 1969. If otherwise eligible, claimants are entitled to their benefit rights."

Appellant contends that in view of all pertinent circumstances, reasonable men would conclude that a labor dispute existed at the time appellant closed its plant and, therefore,

under the authority of § 1504 of the Indiana Employment Security Act the appellees-employees are not entitled to benefits.

Our review of the record discloses that there was sufficient evidence of probative value to sustain the Review Board's findings that appellant corporation closed its facility during good faith negotiations between appellant and employees-appellees; that appellant unilaterally declared an impasse in negotiations and subsequent thereto closed its plant and declared that a labor dispute existed. The evidence shows that employees-appellees, prior to appellant's closing of its plant, did not in any manner hinder production or deviate from their normal duties of employment. Reasonable men would not have concluded to the contrary. Further, the Review Board's finding that good faith negotiations between the employer-appellant and representatives of the employees-appellees, where the facts showed the bargaining process to be in a fluid state, thereby precluding the existence of a labor dispute which would disqualify the benefits otherwise permitted by § 1504 of the Act, is fully supported by the authority of *Bootz Mfg. Co.* v. *Review Board of Ind. Emp. Sec. Div.* (1968), 143 Ind. App. 111, 237 N. E. 2d 597, 238 N. E. 2d 472 (Transfer denied).

Decision affirmed. Costs assessed against appellant.

Hoffman, Sharp and White, JJ., concur.

NOTE.—Reported in 252 N. E. 2d 848.