ARTIM TRANSPORTATION SYSTEM, INC. *v.* REVIEW BOARD.

[No. 1170A191. Filed June 29, 1971. Rehearing denied August 5, 1971. Transfer denied October 28, 1971.]

138

*William L. Travis, James E. Schreiner, Travis & Tinkham,* of counsel, of Hammond, for appellant.

*Theodore L. Sendak,* Attorney General, *Darrel K. Diamond,* Deputy Attorney General, for appellee.

ROBERTSON, J.—This matter comes to us for a judicial review of a decision of the Review Board of the Indiana Employment Security Division. Claimants, some 76 employees of Artim Transportation System, appellant herein, filed individual applications for unemployment compensation benefits for approximately three weeks of unemployment arising out of a work stoppage at the Artim truck terminal in Hammond, Indiana. Artim notified the Indiana Employment Security Division that the claimants' unemployment was due to a labor dispute and should not, therefore, be compensable under § 1504 of the Indiana Employment Security Act as found in IC 1971, 22-4-15-3, Ind. Ann. Stat. § 52-1539c, (Burns' 1964). Thereafter, a hearing was had before a referee which resulted in a finding that claimants had not participated in a labor dispute and were thereby eligible for benefits. Artim appealed to the Review Board which affirmed the decision of the referee.

In affirming the referee's decision the Review Board stated the relevant evidentiary facts and inferences drawn therefrom, as follows:

"STATEMENT OF FACTS: The record is in agreement that the claimants were unemployed during week ending April 15, 1967, when they returned to work, as recalled by the employer herein, subsequent to the establishment of a new agreement between the employer and Teamsters Union Local 142, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. It is shown that the agreement between the employer and said union had expired on March 31, 1967.

"An association representing the employer herein, as well as other trucking companies, began negotiations with representatives of the employees' bargaining unit early in March 1967, and had frequent meetings until an agreement was reached on or about May 4, 1967. There is no evidence of probative value showing that an impasse in negotiations had been reached at any particular time, however, it is shown that negotiations continued in a fluid state.

"The employer herein unilaterally determined that a 'labor dispute' existed and, therefore, ceased operations during week ending April 15, 1967, recalled claimants to work week ending April 22, 1967, and then again ceased opera-

tions from week ending April 29, 1967, to May 4, 1967. The record establishes that during the cessation of operations by this employer, work was available, claimants were available, the empoyer's place of business was not being struck, nor were the claimants picketing.

"The employer's position is that since an association members place of business was being struck, 'a strike against one is a strike against all.' "

Based on the foregoing statement of facts the Review Board entered the following findings and conclusions:

"FINDINGS AND CONCLUSIONS: The Review Board finds that the collective bargaining agreement between the employer herein and Teamsters Union Local 142, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, expired on March 31, 1967.

"It further finds that the employer was a member of an association of motor freight operators who began negotiations with the claimants' bargaining unit in early March 1967, to establish a new agreement.

"It further finds that good faith negotiation meetings occurred frequently and remained in a fluid state until May 4, 1967, when a new contract was agreed upon.

"It further finds that good faith negotiations between labor and management do not in or of themselves constitute a labor dispute.

"It further finds that this employer unilaterally determined that a 'labor dispute' existed and, therefore, ceased operations for week ending April 15, 1967, pending negotiations during said week.

"It further finds that the claimants were recalled by the employer and worked week ending April 22, 1967.

"It further finds that the employer again ceased operations for week ending April 29, 1967, to May 4, 1967, and the claimants returned to work, as recalled.

"It further finds that during the claimants' unemployment, as set forth herein, they were available for work, the employer's establishment was not being struck, the claimants were not picketing, and neither is it shown that the claimants were withholding their services.

"The Review Board concludes that the claimants are not disqualified from receiving benefit rights under § 1504 of the Act since there was no labor dispute between the em-

ployer and claimants at the employer's establishment or place of business. . . .

"It further concludes that the claimants were unemployed through no fault of their own and cause for their unemployment is therefore attributable to the employer within the meaning of the Act."

As provided by the Indiana Employment Security Act in IC 1971, 22-4-17-12, Ind.Ann.Stat. § 52-1542k (Burns' 1964), appellant assigns error in that the decision of the Review Board is contrary to law. As further provided by Burns' § 52-1542k, said assignment is sufficient to present to the reviewing court both the sufficiency of the facts found to sustain the decision, and the sufficiency of the evidence to sustain the findings of fact.

Appellant seeks to establish the ineligibility of claimants for unemployment compensation under the disqualification provision of the Act, as set forth in IC 1971, 22-4-15-3, Ind. Ann. Stat. § 52-1539c (Burns' 1964), which reads:

"An individual shall be ineligible for waiting period or benefit rights: for any week with respect to which an employee of the division, designated by the director and hereinafter referred to as the deputy, finds that his total or partial or part-total unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he was last employed; Provided, That this section shall not apply if it is shown to the satisfaction of the deputy that: he is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work; and he does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in or financing or directly interested in the dispute; and he has not voluntarily stopped working, other than at the direction of his employer, in sympathy with employees in some other establishment or factory in which a labor dispute is in progress. . . ."

It is contended by appellant that the evidence is insufficient to support the Board's finding that the claimants are

not disqualified from receiving benefit rights under Burns' 1539c, *supra*.

It is a well settled premise of judicial review of administrative decisions that this court is not at liberty to weigh the evidence and that we must accept the facts as found by the Review Board. However, this court and our Supreme Court have established several important exceptions to this general rule, which if proven by the party seeking reversal, can provide the basis for reversing the decision of the Review Board. In *Williamson Co.* v. *Review Bd. of Indiana Emp. Sec. Div.* (1969), 145 Ind. App. 266, 250 N. E. 2d 612, 616, these exceptions were clarified and restated as follows:

"(1)  The evidence on which the Review Board based its conclusions was devoid of probative value;
"(2)  The quantum of legislative evidence was so proportionately meager as to lead to the conviction that the finding does not rest upon a rational basis;
"(3)  The result of the hearing before the Review Board was substantially influenced by improper considerations;
"(4)  There was no substantial evidence supporting the conclusions of the Review Board;
"(5)  The order of the Review Board, its judgment or finding, is fraudulent, unreasonable or arbitrary;
"(6)  The Review Board ignored competent evidence;
"(7)  Reasonable men would be bound to reach the opposite conclusion from the evidence in the record."

In support of its assigned error, appellant relies upon all of the aforementioned exceptions as the basis for reversal of the Review Board's decision.

After carefully reviewing the record, we do not agree with appellant's argument that the Review Board's findings fall within the *Williamson, supra,* exceptions. The record reveals that the evidence concerning the facts was conflicting, and because it was conflicting we cannot say that reasonable men would have reached a different conclusion than that reached by the Review Board herein.

In a judicial review of an administrative decision, the burden of proof rests upon the appellant to show that the Board erred in reaching its decision. *Bootz Mfg. Co. v. Review Bd. of Ind. Emp. Sec. Div.* (1968) 143 Ind. App. 17, 237 N. E. 2d 597.

Appellant herein has failed in its burden of proving that the Review Board erred in its finding that a labor dispute did not exist at the factory, establishment, or other premises at which the claimants were last employed. It can be inferred from the evidence that a labor dispute did exist at the C. P. T., another member of the employer bargaining association, truck terminal. However, the strike by other members of claimants' local union against their employer who was a member of appellant's bargaining association does not affirmatively establish the existence of a labor dispute at appellant's truck terminal.

To overcome its failure to affirmatively establish a labor dispute at its truck terminal, appellant has urged this Court to adopt the interpretation that a strike by other members of claimants' union against their employer is a strike against all the members of the employer bargaining association. In support of this contention, appellant has relied upon several National Labor Relations Board cases wherein the United States Supreme Court, as well as other federal courts, have held that it is not an unfair labor practice for an employer who is a member of an employer bargaining association to lock-out its non-striking employees in response to a "whip-sawing" strike by the employees' union against the association. While it was implied in these labor relation cases that under the particular facts of each case a strike against one member employer was a strike against all the members of the association, it was neither stated nor implied that to construe a strike against one as a strike against all should stand as a general rule of interpretation. To do so in either labor relations cases, or unempoyment compensation cases, as the instant one, would be to negate the necessity of showing wheth-

er the member employer locked out its employees in response to whipsaw or selective strikes by the employees' union against the employers bargaining association, or whether the employer independently locked out its employees while another employer was being struck due to a labor dispute between that employer and its employees based solely on local issues.

Furthermore, appellant's citation of National Labor Relations Board cases is of little benefit in this judicial review, since those cases are solely concerned with what constitutes unfair labor practices and not with the issue of eligibility of employees for unemployment compensation. As was stated in *City Pattern & F. Co. v. Review Bd. of Ind. Emp. Sec. Div.* (1970), 147 Ind. App. 636, 263 N. E. 2d 218, at p. 223:

> "Interspersed in their argument that '[t]he evidence on which the Review Board based its conclusion was devoid of probative value', are citations of and quotations from federal cases concerning the employers' right under the National Labor Relations Act to use the lockout as an economic bargaining weapon 'in support of a legitimate bargaining position.' Appellants fail to note that there is a distinction between the rights and duties of employers and employees under the National Labor Relations Act and the rights of unemployed persons under the Employment Security Act."

Appellant further urges reversal of the Review Board's decision on the theory that claimants failed to establish that they came within any of the exception provisions of IC 1971, 22-4-15-3, Ind. Ann. Stat. § 52-1539c (Burns' 1964). We find no merit in this theory in that it has not been shown that claimants are disqualified from eligibility for benefit rights under the governing proviso of § 52-1539c, and therefore, it was not incumbent upon the claimants to establish that they came within one of the exceptions to the disqualification proviso. The statute sets forth in clear and unambiguous language that an individual shall be ineligible for benefits if it is found that the work stoppage was due to a *"labor dispute at the factory, establishment, or other premises at which*

*he was last employed:"*. (Emphasis added). Appellant may have succeeded in establishing that a labor dispute existed at the "factory, establishment, or other premises" of another member of its multi-employer bargaining association, but it did not, as the Board found, successfully establish a labor dispute at its own establishment.

It is arguable that to reach a different conclusion in the instant case would better serve the declared public policy of this state to remain neutral in labor management relations. However, to reach a different result would be to violate the clear and unambiguous language of the statute as it presently reads. If the public of the state would be better served by amending the statute to encompass modern labor and management practices not contemplated when the statute was initially enacted, then the responsibility lies with the legislature and not with the courts to so change the statute.

In *General Motors Corp.* v. *Review Bd. of Ind. Emp. Sec. Div.* (1970), 146 Ind. App. 278, 255 N. E. 2d 107, a position similar to our holding in the present case was expressed in a concurring opinion as follows:

"Appellees in their briefs properly paraphrase each of the contentions made by appellant in its brief. During oral argument, however, appellant injected a public policy consideration deserving of comment here. Appellant argued that state funds in the form of compensation benefits should not be made available to unions in such a manner as to constitute a subsidy to selective strike activity such as here conducted. In this connection, it was the substance of appellees' argument that even if the union did, in fact, utilize the 'selective strike' method for maximum negotiating leverage upon the entire General Motors operation and even if the union did so with the knowledge and expectation that certain non-striking employees, arbitrarily selected by the union, as here, could draw financial assistance in the form of unemployment benefits, thereby decreasing the adverse effect of the labor dispute upon such employees, such does not alter the fact that union conduct of this sort is not statutory cause for benefit ineligibility. Appellees stated that if the labor strategy of this sort is deemed an evil it is for the legislature to so declare and to remedy that evil

by statutory amendment. While I recognize the very real public policy consideration in this respect I tend strongly to agree with appellees that we can no more judicially legislate or implement what we think public policy should be in this regard, than we can arbitrarily, *dehors* the record, attribute to the union the 'evil' motives hereinabove referred to."

Appellant has cited several cases from other jurisdictions wherein, either by statute or statutory construction, employees who were locked out by their employer acting in response to the employees' union striking another member of the employers bargaining association were denied eligibility for unemployment compensation benefits. In those jurisdictions where the applicable statute differs from ours, there can be little question that those courts are empowered to reach a conclusion different from the result we are compelled to reach herein. However, we do not find ourselves in a position to follow those jurisdictions which in construing a statute substantially similar to ours, have ignored statutory language in order to reach a desired result.

One such case cited by appellant is *McKinley* v. *California Employment Stabilization Com'n.* (1949), 34 Cal. 2d 239, 209 P. 2d 602, where confronted by both a factual situation and a statute substantially similar to those in the instant case, the Court denied unemployment compensation benefits to the claimants. However, three of the seven justices in *McKinley, supra,* dissented for the same reasons we feel compelled to reach a result different from the majority holding in that case.

In his dissenting opinion, the Chief Justice in *McKinley, supra,* p. 617, expressed his opposition to the majority viewpoint as follows:

"It is not the province of this court to consider either the merits of the trade dispute underlying the stoppage of work or the social desirability of paying benefits to petitioners' employees. See W. R. Grace & Co. v. California Employment Comm., 24 Cal. 2d 720, 731, 151 P. 2d 215; Bodinson Mfg. Co. v. California Employment Comm., 17 Cal. 2d 321, 325,

109 P. 2d 935. There is nothing in section 56 or any other portion of the Unemployment Insurance Act which would justify a denial of benefits here, and the possibility that the allowance of benefits in a case such as this may furnish some members of a union with funds which could be used to help finance a labor dispute is plainly a matter which only the Legislature may consider."

Another dissenting justice in *McKinley, supra,* p. 618, stated:

"I cannot believe that it was the intention of the Legislature in enacting Section 56 of the Unemployment Insurance Act, to disqualify from unemployment insurance benefits any employees except those who actually leave their work because of a trade dispute between them and their employer. This is what the act provides, and to extend it further by judicial interpretation, is, to my mind, nothing more or less than judicial legislation."

In accordance with the foregoing reasons we are constrained to hold that the decision of the Review Board is not

■ contrary to law and should, therefore, be affirmed.

Sullivan, C. J., and Lowdermilk, J., concur.

Buchanan, J., concurs in result with separate opinion.

## CONCURRING OPINION

BUCHANAN, J.—I reluctantly concur in the result only in this case and arrive at the same conclusion by a more circuitous and scenic route which quarrels with the majority opinion on several grounds.

POINTS OF DISAGREEMENT WITH MAJORITY OPINION—More specifically I disagree with it because:

1. it narrowly construes Ind. Ann. Stat. § 52-1539c (Burns' 1964 Repl.), (the Statute), so as to require that to deprive a claimant of benefits the labor dispute must literally exist at the single geographic "establishment" at which he was last employed.

2. it implies that the Statute as originally passed and as amended does not take into consideration the use of selective strikes by unions and labor management negotiations.

3. it implies that this Court had a choice in the conclusion that it could have reached upon the facts of this particular case.

At the outset of our journey, it is helpful to restate the esential facts in order to develop these points.

RESTATEMENT OF ESSENTIAL FACTS—The appellant employer, Artim Transportation System, Inc., (Artim) was one of several like employers represented by an Indiana Truckers' Association Committee negotiating for and on behalf of these employers with Local 142 of the Teamsters Union representing the employees of the employers in joint negotiations following the expiration of a three year contract with the Union which expired on March 31, 1967. Thus there appears to have been at least one prior joint negotiation between these parties for a master contract on an industry-wide basis.

At one point during the negotiations and after the master contract had expired a strike was called at C. P. T., one of the employers represented by the Indiana Truckers' Association Committee. There appears to be more than an inference of a strike, but there is no indication whatsoever in the record as to the reasons for the strike or as to the issues involved. There is an inference, however, that Artim reacted to this strike by locking out its employees which would also infer that Artim at least considered the strike to concern issues being negotiated in the master contract and not local issues. Artim locked out its employees even though they were ready, willing and able to work declaring that "a strike against one is a strike against all".

During the entire period of the strike and the lockout negotiations continued on the master contract.

The Artim employees filed suit and were granted unemployment compensation benefits on the basis that there was no labor dispute at the place of business where they were employed and therefore they were "unemployed through no fault of their own."[1]

DISCUSSION OF POINTS OF DISAGREEMENT:

1. One clearly gets the impression from the majority opinion that a strike to constitute a labor dispute in these circumstances can not be geographically separate from the establishment of the employees seeking unemployment compensation.

The majority opinion says:

> "However, the strike by other members of claimants' local union against their employer who was a member of appellant's bargaining association does not affirmatively establish the existence of a labor dispute at appellant's truck terminal".

Again, "The statute sets forth in clear and unambiguous language that an individual shall be ineligible for benefits if it is found that the work stoppage was due to a *'labor dispute at the factory, establishment, or other premises at which he was last employed'*: Appellant may have succeeded in establishing that a labor dispute existed at the 'factory, establishment, or other premises' of another member of its multi-employer bargaining association, but it did not, as the Board found, successfully establish a labor dispute at its own establishment." (Their emphasis)

I disagree with the proposition that a strike at the establishment of another member of a multi-employer bargaining group is not a strike constituting a labor stoppage due to a

1. Decision of Review Board of the Indiana Employment Security Division, October 5, 1970.

labor dispute at the establishments of other members of the multi-employer bargaining group and support such disagreement with respectable authority.

Many cases which have squarely met the issue have interpreted the word "establishment" to find a labor dispute to exist where the strike occurs at the plant of *another member* of the multi-employer bargaining group.

One of the leading cases on this point is *McKinley, et al.* v. *California Employment Stabilization Commission* (1949), 34 Cal. 2d 239, 209 P. 2d 602, where the court said:

> "It seems clear that under such industry-wide, single contract negotiation, economic action by either side, whether strike or lockout, would be considered by each of the parties as action against the entire group struck or locked out . . . the selection of a certain plant or plants for a shutdown by strike at a particular time was a mere matter of strategy in the conduct of the trade dispute which equally involved all of the bakeries and their employees. This, in effect, applied the union's economic sanctions against each employer and brought about the unemployment of all of its members."

Another leading case supporting the proposition that a labor dispute exists wherever its subject matter applies, is *Unemployment Compensation Commission of Alaska* v. *Aragon* (1946), 329 U.S. 143, 91 L. Ed. 136, the court said:

> "Nor can we accept the argument of the majority of the Court of Appeals that since negotiations between the companies and the workers were carried on in San Francisco and Seattle, the dispute could not be said to be 'at' the Alaskan establishments as required by the statute. . . . *It is clear that the subject matter of the dispute related to the operation of the Alaskan establishments.* As a result of the dispute, the normal activities involved in catching and canning salmon were not carried on throughout the 1940 season at any of those establishments. *We do not consider significant the fact that the companies and the union did not negotiate at the canneries or on the ships in Alaskan waters.* . . . . Furthermore, it should be observed that the respondent union voluntarily entered into the negotiations conducted at San Francisco and Seattle and at no time challenged the propriety of this practice. Thus if we assume with respond-

ents that this issue is properly presented for consideration, *we conclude that under the circumstances of this case the dispute was 'at the factory, establishment, or other premises' in the sense intended by the Territorial Legislature."* [Emphasis Supplied]

The Michigan Supreme Court followed *Aragon* in *Peaden* v. *M. E. S. C.* (1959), 355 Mich. 615, 96 N. W. 2d 281, and *Buzza* v. *U. C. C.* (1951), 330 Mich. 223, 47 N. W. 2d 11.

To the same effect is *Alvarez* v. *Administrator, Unemployment Compensation* (1952), 139 Conn. 327, 93 A. 2d 298, where the court used this language:

"The plaintiffs argue that the dispute in this case did not exist at United's factory in Stamford but at the plant of Jaunty in New York. *This contention confuses the locus of the substance of the dispute with the locus of the negotiations looking to a settlement of it. The controversy concerned wages to be paid at United's factory. The subject matter of the dispute was, therefore, at the factory at which the plaintiffs were employed."* [Emphasis Supplied]

Closer to home is *Buchholz* v. *Cummins* (1955) 6 Ill. 2d 382, 128 N. E. 2d 900, where the facts are almost identical. In affirming the lower court judgment denying benefits and after reciting the facts at some length the court said:

"We find a full-fledged labor dispute existing between the Association and the Union, and we find a lockout during the progress of that dispute."

I note that the majority opinion quotes from the dissent in the *McKinley* case, *supra,* but cites no other authority whatsoever in support of its position.

A logical analysis of a strike at the establishment of one of a multi-employer union bargaining group negotiation for a master contract must of necessity lead to a conclusion that a labor dispute comes into existence at all of the establishments of the employers bargaining for pay, terms of employment and working conditions effecting all employees, unless such strike is shown to concern genuine local issues.

There is a single and joint effort by all of the parties to ne-. gotiate a single master contract by which they are all bound and by which they all presumably benefit. The act of part of the whole must be considered the act of the whole. Were it not so, this joint effort to peaceably negotiate an industry-wide contract results in a "heads-I-win-tails-you-lose" application of the Statute. A strike against a single member during such negotiation imposes sanctions and economic pressure on all members of the employer group and thereby creates a labor dispute which affects and touches and concerns all parties alike at each "establishment". The possibility of multiple geographically separated establishments is recognized by the Statute which says:

. . . "factory, establishments *or other premises* at which he was last employed" . . . [Emphasis Supplied]

This is the principle that is recognized in California, Utah, Connecticut, Alaska, Michigan, Illinois and other states.

Where persons similarly situated engage in joint undertaking for a common objective the act or acts of one of the parties so associated can and should be attributed to the other parties involved. The principle of attribution is no stranger to the law, numerous examples could be cited of the application of this principle. Thus, a strike at one establishment constitutes a labor dispute at another establishment under these circumstances.

Buttressing this interpretation of the word "establishment" are certain other words in the statute which the majority apparently overlook. These words state emphatically that an employee is ineligible for benefits if he is "participating in or financing or directly interested in the labor dispute which caused the stoppage of work". The rest of the wording of the statute strengthens the concept of denial of benefits where the employee has voluntarily stopped working.

I recognize and have so stated in *Renwanz* v. *Review Board* (1971), 148 Ind. App. 540, 267 N. E. 2d 844, that the Employ-

ment Security Act is social welfare legislation and as such should be liberally construed. However, this section of the statute is complementary to the provisions of Ind. Ann. Stat. § 52-1525 which defines the purposes and objectives of the Employment Security Act. It is evidence of the positive intent of the legislature to deny the benefits of the act to those whose unemployment is voluntary. *Blakely* v. *Review Board of The Indiana Employment Security Division* (1950), 120 Ind. App. 257, 90 N. E. 2d 353.

The majority has by implication neglected to consider that an employee may voluntarily affect the status of his employment by "participating" in a master contract situation where selective strikes are used. An employee may also be said to be "financing" the strike by paying his union dues.

The *Buchholz* case, *supra,* expresses the general purpose of the Illinois Act as being to relieve involuntary unemployment. The Court preceded this statement by saying that the Illinois Unemployment Compensation Act is similar to most states which follow in a general fashion the original English statute which provides for some form of ineligibility for unemployment compensation and work stoppages caused by labor disputes.

So it seems the clear intent of the statute and its express language would disqualify employees for benefits in these circumstances. Furthermore, the statutes of the various states are substantially similar. For example:

Illinois— "For any week with respect to which it is found that his * * * employment is due to a stoppage of work which exists because of a labor dispute at the * * * establishment * * * at which he is or was last employed". Ill. Rev. Stat. 1949, Chap. 48, pars. 217 et seq.

California—"An individual is not eligible for benefits for unemployment, and no such benefits shall be payable to him under any of the following conditions: (a) if he left his work because

of a trade dispute and for the period during which he continues out of work by reason of the fact that the trade dispute is still in active progress in the establishment in which he was employed." Stats. 1945, ch. 1178, p. 2225, Deering's Gen. Laws, 1945 Pocket Supp., Act 8780d, sec. 56.

Utah— "An individual shall be ineligbile for benefits: * * * (d) for any week in which it is found by the commission that his total or partial [total or partial, now deleted] unemployment is due to a stoppage of work which exists because of a strike involving his grade, class or group of workers at the factory or establishment at which he is or was last employed."[2]

It is my opinion that the cases cited herein construing statutes of the various states having statutes similar to ours have not "ignored statutory language in order to reach a desired result", as the majority opinion says, but rather have reached the result by sound in depth legal reasoning.

2. The majority opinion implies that the Statute in its origin and its application is not broad enough to cover the use of selective strikes by unions in master contract situations.

The majority says:

"it is arguable that to reach a different conclusion in the instant case would better serve a declared public policy of this state to remain neutral in labor management relations. However, to reach a different result would be to violate the clear and unambiguous language of the statute as it presently reads."

In addition to what has been said above indicating that selective strikes are contemplated by the Statute, Indiana case law has taken a broad and realistic view as to what constitutes a stoppage of work which exists because of a labor dispute. It makes no difference whether the stoppage of work exists by

2. For a more complete discussion of the cases see 28 A. L. R. 2d 287.

reason of a strike, a walkout, a slow down or a lockout, if such action and condition arose and proceeded by reason of or was caused by a labor dispute. *Adkins* v. *Review Board of The Indiana Employment Security Division* (1946), 117 Ind. App. 132, 70 N. E. 2d 31.

In this case the Court found that a lockout is a labor dispute within the meaning of the Act.

The conclusion that our statute is broad enough to encompass selective strikes in multi-employer, master contract bargaining situations is an inevitable and sound one.

3. The majority opinion seems to imply that it would be possible to reach a different result in this case in order to serve the declared public policy to remain neutral in labor management relations. This they say would be difficult to do because of the clear and unambiguous language of the statute.

The majority had no alternative to reach a different result, but not because of the clear and unambiguous language of that narrow part of the statute upon which they fixed their focus. In my opinion one reason, and one reason only exists why unemployment benefits should be allowed to Artim's employees. There is no finding or showing in the record as to the character and nature of the strike at C. P. T.

The confused record and the briefs in this case are bare of any shownig or evidence that the strike at C. P. T. involved issues which were involved in the joint negotiations. There is no finding of fact that the strike related to genuine local issues. The record being silent on this point we have no choice but to uphold the allowance of benefits, since on appeal we must resolve all doubts in favor of the appellee. *City of Ft. Wayne* v. *Bishop* (1950), 228 Ind. 304, 92 N. E. 2d 944.

Without some showing of the nature and character of the strike at C. P. T. this case does not come within the purview of the cases cited above from other jurisdictions which recognize a strike at one establishment as constituting a labor dispute at all establishments of the multi-employer group.

Had this element been present, this case should have been decided differently notwithstanding the decision of this Court in *General Motors Corp.* v. *Review Bd. of Ind. Emp. Sec. Div.* (1970), 146 Ind. App. 278, 255 N. E. 2d 107, which upheld eligibility of employees for benefits in a selective strike situation. While this case is distinguishable in that only *one employer* was involved, the holding thereof is not supported by sound reason or logic. The principle of attribution and the language of the Statute relating to "participating in" and "interest in" labor disputes referred to above, should have led to the same result reached in *McKinley, Buchholz* and companion cases.

In General Motors, in addition to the fact there was one employer only, the Review Board found "GM is a very highly integrated organization".

The one employer was unified and an integrated organization and yet the court went on to find no labor dispute at the plants not being struck. The court discussed various factors and tests which should be considered in a finding that the word "establishment" is broad enough to include various plants and then says that it is has applied these factors in reaching its conclusion. Surprisingly, it does not say exactly which factors it is applying or how they are being applied.

Part of the excuse given for this conclusion is that an employer cannot waive or release the rights and benefits of the individual under the Statute. However, an individual himself at his "establishment" can waive such rights and benefits by being "interested in", by "participating in", and by financing selective strikes during master contract negotiations, and this is precisely what often happens.

In my opinion the majority in this case has compounded the error of the General Motors case by taking a superficial view of the Statute and by using language which is contrary to the soundest and best reasoned cases on the subject.

End of journey.

NOTE.—Reported in 271 N. E. 2d 494.