Shirley M. MARTIN, Appellant
(Defendant Below),

v.

REVIEW BOARD OF the INDIANA EMPLOYMENT SECURITY DIVISION, Appellee (Plaintiff Below).

No. 2-880A292.

Court of Appeals of Indiana, Fourth District.

June 8, 1981.

Legal Services Program of Northern Ind., Inc., Jay Lauer, South Bend, for appellant.

Theodore L. Sendak, Atty. Gen., Gordon R. Medlicott, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

Shirley M. Martin is appealing from a decision by the Review Board of the Indiana Employment Security Division (Review Board), holding her ineligible to receive unemployment compensation benefits based on a finding that she refused to accept suitable work without good cause. Since we find the Board's decision is contrary to law, we reverse.

## FACTS

In an earlier consideration of this case, this Court examined an appeal from a Review Board determination that Martin had refused to accept suitable work as required by Ind.Code 22–4–15–2 which provides in relevant part: "an individual shall be ineligible for waiting period or benefit rights: If the director or the division finds that being totally, partially, or part-totally unemployed, he fails without good cause, . . . to accept suitable work when found for and offered to him . . . by an employing unit, . . . ." Martin appealed the decision alleging her unrefuted testimony on transportation and babysitting problems established good cause, within the meaning of the statute, for refusing the employment in question. The Review Board's decision which affirmed a referee's earlier decision by adopting his findings of fact and conclusion, was as follows:

"FINDINGS OF FACT: The evidence established that the claimant previously worked for this employer during her base period for a period of approximately three (3) weeks during September and October of 1978 monitoring alarm systems. Her rate of pay at the time of separation was $2.90 per hour. On or about October 6, 1979 the claimant was told by the Division that the subject employer had a position available for her. The claimant contacted the employer and was told that a position was open under basically the same terms and conditions which she had been previously employed. *The claimant indicated that she could not accept the position because of transportation problems and baby sitting problems.* The employer stated that the claimant did, in fact, contact them and they offered her basically the same job that she had previously held. The claimant was also told that there was part time work available and there would by a possibility of a day job if, in fact, one opened. The employer stated that the claimant merely called and said that she would not accept the position.

CONCLUSION. From the foregoing findings it must be concluded that the claimant refused an offer of suitable work from a base period employer under basically the same terms and conditions under which she had previously been employed and, therefore, her refusal must be held to have been without good cause." (Emphasis added.)

Martin then perfected an appeal to this Court challenging the Review Board's decision as contrary to law and arguing it was her right, without loss of benefits, to place reasonable work-shift restrictions on her acceptance of employment to accommodate transportation and child care problems. However, we were unable to reach the merits of her contentions at that time, since the Review Board did not indicate either: 1) whether they found these problems existed or 2) whether such problems were the reasons for Martin's refusal to accept the proffered employment. We remanded 415 N.E.2d 168 (N.E.) and ordered the Review Board to certify specific findings of fact on these issues. Pursuant to that order, the Review Board has certified the following findings, enabling us to reach the merits of Martin's appeal:

"[1] The Review Board finds that during W/E [the week ending] October 6, 1979, the claimant was referred to available work with this base period employer and if available to please report to said employer.

It further finds that the potential employment was the same as the claimant's previous employment, monitoring alarm systems, for an hourly rate of $2.90 and working the hours of 4:00 P.M. to 12:00 Midnight.

It further finds that the claimant called the employer after receiving the referral and advised she would not accept the employment.

It further finds that the claimant did not file an application with this potential employer indicating hours of availability for work.

It further finds that the claimant refused the available employment *because she would have to employ a 'baby sitter' for her school age children for the hours of work offered, and she would not be able to see her children.*

*It further finds that the claimant would have transportation problems if she worked the 4:00 P.M. to Midnight shift.*

It further finds that transportation is the responsibility of the claimant.

It further finds that the restrictions placed on accepting available employment by the claimant removes her from the labor market.

It further finds that the claimant refused an offer of suitable work during W/E October 6, 1979, with this base period employer *for personal reasons and not good cause* within the meaning of Chapter 15–2 of the Act." (Emphasis added.)

Martin continues to maintain the Board's decision is contrary to law.[1]

## ISSUE

Did the restrictions Martin placed on her acceptance of employment to accommodate child care and transportation problems constitute "good cause" for refusing employment under IC 22–4–15–2?

## DECISION

■ Under Ind.Code 22–4–17–12, "[a]n assignment of errors that the decision of the review board is contrary to law, [sic] shall be sufficient to present both the sufficiency of the facts found to sustain the decision, and the sufficiency of the evidence to sustain the findings of fact." As a general rule, we are not at liberty to weigh the evidence but must accept the facts as found by the Review Board. IC 22–4–17–12. However, there are important exceptions to this general rule which, if proven by the party appealing the decision, warrant reversal. Three of these exceptions appear to form the basis for Martin's arguments: 1) the judgment or finding is unreasonable or arbitrary; 2) reasonable persons would be bound to reach the opposite conclusion from the evidence in the record; and 3) there was no substantial evidence supporting the conclusion. *Artim Transportation System, Inc. v. Review Bd. of the Ind. Employment Sec. Div.*, (1971) 149 Ind.App. 137, 271 N.E.2d 494; *International Steel Co. v. Review Bd. of the Ind. Employment Sec. Div.*, (1969) 146 Ind.App. 137, 252 N.E.2d 848; *Williamson Co. v. Review Bd. of the Ind. Employment Sec. Div.*, (1969) 145 Ind.App. 266, 250 N.E.2d 612.[2] With regard to this last exception, we note "substantial evidence" means "such relevant evidence as a reasonable mind might accept as sufficient to support a conclusion." *Williamson Co. v. Review Bd. of the Ind. Employment Sec. Div.*, supra, at 274, 250 N.E.2d at 617, *quoting, Vonville v. Dexter*, (1948) 118 Ind.App. 187, 208, 77 N.E.2d 759, 760.

With these exceptions and definitions in mind, we find the Review Board erred in several respects. First, it erred in dismissing Martin's transportation defense by concluding transportation is the claimant's responsibility. (Finding No. 7) Secondly, there was no evidence to support the Board's conclusion (Finding No. 8) that Martin's refusal to work a 4 p. m. to midnight shift removed her from the labor market, particularly since the uncontradicted evidence indicated there were no restrictions, due either to transportation or babysitting problems, on her employment from 7 a. m. to 9 p. m. And, finally, the Board erred in concluding Martin's transportation and babysitting problems were not "good cause" for refusing employment within the meaning of IC 22–4–15–2.

■ Generally, the Review Board's errors seem to arise from confusion of the definitions of "good cause" for *refusal* of employment under IC 22–4–15–2 and "good cause in connection with the work" for *voluntarily leaving* employment under 22–4–15–1.[3] The Review Board appears to incorrectly

---

1. Only Martin filed a "Supplemental Brief" after the Board certified specific findings pursuant to the order on remand.

2. *Williamson Co. v. Review Bd. of the Ind. Empl. Sec. Div.*, supra, summarized the exceptions warranting reversal as follows:

   "(1) The evidence on which the Review Board based its conclusion was devoid of probative value;

   (2) The quantum of legitimate evidence was so proportionately meager as to lead to the conviction that the finding does not rest upon a rational basis;

   (3) The result of the hearing before the Review Board was substantially influenced by improper considerations;

   (4) There was no substantial evidence supporting the conclusions of the Review Board;

   (5) The order of the Review Board, its judgment or finding, is fraudulent, unreasonable or arbitrary;

   (6) The Review Board ignored competent evidence;

   (7) Reasonable men would be bound to reach the opposite conclusion from the evidence in the record."

   *Id.* at 274, 250 N.E.2d at 616.

3. IC 22–4–15–1 provides in pertinent part: "an individual shall be ineligible for waiting period or benefit rights ... if it is determined that he voluntarily left his employment without good cause in connection with the work...."

treat these two provisions as establishing identical standards even though Indiana case law expressly requires a distinction. The latter "good cause in connection with the work" requirement means the reasons for termination of employment must be job-related and thus objective in character, excluding reasons which are purely personal and subjective. *E. g., Thomas v. Review Bd. of the Ind. Employment Sec. Div.,* (1979) Ind., 391 N.E.2d 1127, *rev'd on other grounds,* (1981) —— U.S. ——, 101 S.Ct. 1425, 67 L.Ed.2d 624.[4] Conversely, the same personal reasons which would not constitute good cause in connection with work may constitute good cause for refusing employment *if the claimant's restrictions do not effectively remove her from the labor market. Gray v. Dobbs House, Inc.,* (1976) 171 Ind.App. 444, 357 N.E.2d 900; *Thomas v. Review Bd. of the Ind. Employment Sec. Div., supra.* Thus, although neither the statute nor our case law completely defines "good cause" for every occasion, the statute anticipates a less strict standard for the refusal of new employment than does the statute containing the "good cause in connection with the work" standard for voluntarily leaving employment.

The rationale supporting these different standards was explained in *Thomas v. Review Bd. of the Ind. Employment Sec. Div., supra,* as follows:

"A stricter standard being applied to those who voluntarily quit work as compared to those who *refuse available work* seems to be in keeping with the intent of the legislature and the announced purpose of the Unemployment Compensation Act to avoid the menace of unemployment by encouraging people to maintain present jobs rather than to quit them. It allows employees to restrict or place necessary conditions upon their *acceptance of new work,* which would likewise encourage the maintaining of any new employment. This system appears to place responsibility for accommodation of any special considerations where it belongs, on the employee to make known to his prospective employer any special circumstances which will restrict his working. This system also avoids a detailed speculative inquiry by employers of applicant's personal beliefs, conditions or unique situations prior to hiring and avoids requiring an employer to pay money from his fund for compensation to an employee who voluntarily or carelessly places himself in a position where he will have to choose between quitting work or his personal beliefs." (Emphasis added.)

*Id.,* 391 N.E.2d at 1130.[5]

■ The Review Board in the instant case expressly found both child care consid-

---

**4.** Thomas had terminated his employment due to religious convictions against working in an armament factory. The United States Supreme Court reversed the Indiana Supreme Court's decision based on a finding that application of the statute against Thomas would violate the first amendment guarantee against the free exercise of religion.

For additional cases rejecting personal reasons as good cause in connection with work, see *Geckler v. Review Bd. of the Ind. Empl. Sec. Div.,* (1963) 244 Ind. 473, 193 N.E.2d 357 (sensitive to employer's criticism); *Gray v. Dobbs House, Inc.,* (1976) 171 Ind.App. 444, 357 N.E.2d 900 (parental obligations and transportation difficulties); *Lewis v. Review Bd. of the Ind. Empl. Sec. Div.,* (1972) 152 Ind.App. 187, 282 N.E.2d 876 (employee with failing eyesight desired to be with children before he became totally blind).

**5.** Thus in *Gray v. Dobbs House, Inc., supra,* when confronted with an employee who quit

work because of child care and transportation problems, this Court held that although parental obligations might be good cause for rejecting new employment, such obligations did not constitute good cause in connection with work. We noted in that case that because of the difference in the language used by the legislature to establish the two standards:

"we feel compelled to adopt the answer given by the North Carolina Supreme Court when it was faced with the identical question, though in a converse factual situation. In *re Watson,* (1968) 273 N.C. 629, 639, 161 S.E.2d 1, 10, that court held:

'When, in two paragraphs of the same section of a statute, the legislature provides for disqualification of a claimant who leaves his old job without "good cause attributable to his employer" and for disqualification of one who rejects new work without "good cause" we think it evidence that the legislature, for

erations and transportation problems existed. The evidence received at the hearing and accepted by the Review Board indicate Martin was offered a job during the hours of 4 p. m. to midnight, and she had transportation problems after 9 p. m. when the buses stopped running. Here Martin refused new work which would likely, in the immediate future, place her in a position of being forced to choose between either: 1) fulfilling her child care obligations and continuing work, or 2) relinquishing employment due to transportation problems, or a combination of both. Thus, Martin has satisfied the purpose of our unemployment compensation statutes to encourage employment stability.

Admittedly, not every individual's claim of personal problems will warrant a finding of "good cause" to refuse otherwise suitable employment. For example, in *Spears v. Review Bd. of the Ind. Employment Sec. Div.*, (1973) 156 Ind.App. 455, 297 N.E.2d 439, the only Indiana case expressly brought under the provision, IC 22–4–15–2, involved in the case at bar, this Court held that a claimant's refusal to accept employment because she could no longer obtain free babysitting services was not "good cause." Of particular importance in that case, however, was the fact that Spears "may have [been found by the Review Board to be] *unwilling to work at any time of the day* which would totally exclude any real possibility of employment." *Id.* at 457, 297 N.E.2d at 441. The Court therefore expressly distinguished instances where a claimant was otherwise available for employment, citing *Hacker v. Review Bd. of the Ind. Employment Sec. Div.*, (1971) 149 Ind.App. 223, 271 N.E.2d 191, where Hacker could not work during the day but was available for a night-shift job.

■ The Review Board relies heavily on *Spears* and it appears to be the motivation for its inclusion of a finding that Martin

had removed herself from the labor market. However, there is absolutely no evidence in the record to support this finding. To the contrary, Martin repeatedly indicated she was available for work until 9 p. m. and had so informed the Employment Security Division upon application for benefits. The Review Board's conclusion is therefore without any supporting evidence and reasonable persons would be bound to reach a different conclusion regarding Martin's availability for employment.

Although *Spears, supra,* is the only Indiana case construing the good cause provision under IC 22–4–15–2, other cases construing the "availability" provision under IC 22–4–14–3, provide additional guidance. This latter section requires a claimant to be "available for employment" in order to be eligible for benefits. The availability requirement has been viewed as parallel to the "good cause" standard by several cases, *Thomas v. Review Bd. of the Ind. Employment Sec. Div., supra; Gray v. Dobbs House, Inc., supra,* and has been construed in two cases of particular interest. In *Renwanz v. Review Bd. of the Ind. Employment Sec. Div.,* (1971) 148 Ind.App. 540, 267 N.E.2d 844, this Court held it was error to deny unemployment compensation benefits to a claimant who would not accept employment requiring her to work in the evenings or on Sundays because she was needed at home during these times to care for her son. Similarly, in *Hacker, supra,* this Court also held that a claimant who restricted her employment to the night shift because she had four children at home under ten years of age and could not obtain a babysitter to travel a substantial distance to her home during other times of the day was nevertheless "available" for employment and was entitled to benefits where she otherwise indicated her willingness to accept a job on the night shift. In the instant case, we note Martin's defense also revolves around child care considerations since she is a sin-

some reason satisfactory to it, intended to make the difference between the two situations which its language expresses.... The wisdom of such distinction is for the legisla-

ture, our authority being merely to determine the meaning of the words it used.' "
*Id.* at 449, 357 N.E.2d at 904.

gle parent with two young school age children. Thus, considering the similarity between constructions of the "good cause" provision of IC 22–4–15–2 under which Martin was disqualified for benefits and the "availability" requirement of IC 22–4–14–3, and, further, considering that the facts of the *Renwanz* and *Hacker* cases are almost identical to the facts of the instant case, we find the holdings of *Renwanz* and *Hacker* provide ample support for Martin's defense.

Finally, we find it significant that even those cases which have rejected personal reasons under the good cause in connection with the work standard uniformly acknowledge that such reasons may constitute good cause for refusing employment. For example, in *Gray v. Dobbs House, Inc., supra,* the Court stated:

> "[u]nder [the availability provision of 22–4–14–3] one is not necessarily unavailable for work merely because he or she limits the shift to be worked because of parental obligations. *Hacker v. Review Board, supra.*
>
> [And the good cause provision of 22–4–15–2] does not render one disqualified

merely because he rejects an offered job, the hours of which are incompatible with his parental obligations."

Id. at 448, 357 N.E.2d at 904. *See also Thomas v. Review Bd. of the Ind. Employment Sec. Div., supra.* The Review Board therefore erred in concluding Martin's child care responsibilities and transportation problems did not constitute good cause for refusal of employment.[6] Accordingly, the Review Board's decision is reversed.

YOUNG, P. J., and CHIPMAN, J., concur.

---

**6.** We also note that, in its confusion of the two standards, the Review Board included a finding that Martin failed to file an application with the employer indicating hours of availability for work. Under the "good cause *in connection with the work*" standard, Judge Staton in his concurring opinion to *Gray v. Dobbs House, Inc., supra,* suggested that *if* such a notification of hours of work availability were filed with the prospective employer, then voluntary termination of employment due to a change in working hours might be considered job connected under the standard. We are not aware of any cases indicating such a notification is a prerequisite to a finding that refusal of employment because of shift preference is good cause under IC 22–4–15–2.

Moreover, we also note the Review Board's emphasis on the fact that Martin had previously worked for the employer involved. The record indicates Martin, about a year earlier, had worked for approximately three weeks but terminated her employment because of the same reasons she refused the later offer of employment. However, between the time she quit work and the time she refused work Martin had been employed at another company and was terminated. It was this termination which qualified her for the unemployment compensa-

tion benefits discontinued by the Review Board in the instant case. The Review Board has not presented any argument explaining the significance of her brief previous employment with the company involved here, but we note IC 22–4–15–2(a) requires the Board to consider the *distance* to and from work in determining the suitability of employment, with the added proviso that:

> "work under substantially the same terms and conditions under which [the claimant] was employed by a base period employer, which is within his prior training and experience and physical capacity to perform, shall be deemed to be suitable work unless the claimant has made a bona fide change in residence which makes such offered work unsuitable to him because of the distance involved."

Assuming Martin had not changed her residence, we do not believe we can equate "distance" under the statute with the transportation defense proposed here. Moreover, it is not the distance but the shift which makes the employment unsuitable. In any event, Martin's child care responsibilities are sufficient for refusing employment, given her availability for work at reasonable hours, under the cases cited above.