BOOTZ MANUFACTURING CO., INC. v. REVIEW BD. OF EMPLOYMENT SECURITY DIV. ET AL.

[No. 567A1. Filed June 12, 1968. Rehearing denied July 2, 1968. Transfer denied October 9, 1968.]

*Arthur R. Donovan, Harry P. Dees, Joseph A. Yocum* and *Kahn, Dees, Donovan & Kahn*, of counsel, of Evansville, for appellants. *William E. Roberts, D. Reed Scism* and *Roberts & Ryder*, of counsel, of Indianapolis, Amicus Curiae for Indiana Manufacturers Association and Indianapolis Chamber of Commerce.

*Wilbur F. Dassel* and *Winfield K. Denton*, of Evansville, for appellees. *John J. Dillon*, Attorney General and *William E. Matheny*, Deputy Attorney General, for the Review Board. *Edward J. Fillenwarth, Edward J. Fillenwarth, Jr.* and *Fillenwarth & Fillenwarth*, of counsel, of Indianapolis, Amicus Curiae for Indiana Conference of Teamsters. *Lloyd D. DeWester, Jr., Albert J. Schlitt* and *DeWester, Raftery & Andrews*, of counsel, Amicus Curiae for Indiana State A.F.L.-C.I.O.

PRIME, J.—This action is an appeal from a decision of the Review Board of the Indiana Employment Security Division rendered April 10, 1967. The decision held that the appellees were entitled to benefits under the statute.

The motion of the appellees to affirm the judgment, which has previously been held in abeyance, is now overruled.

The decision, omitting formal parts, was as follows:

"The point of dispute before the Review Board is whether or not claimants herein were unemployed through no fault of their own during the period October 18, 1965 until November 1, 1965, within the meaning of Section 1504 of the Indiana Employment Security Act.

STATEMENT OF FACTS: The record indicates that a representation election by production and maintenance employees of Bootz Manufacturing Co., Inc., Evansville, Indiana was held on or about July 6, 1965, and subsequently Local 215, Teamsters Union, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, was certified as the bargaining agent.

On or about July 21, 1965, negotiations were begun between the employer and the bargaining agent for the purpose of establishing a labor-management contract through the process of collective bargaining. The record shows that numerous meetings were held in good faith by all parties concerned prior to October 19, 1965. During a negotiating meeting on October 18, 1965, an employer representative advised those present that the employer was prepared to close the plant at the conclusion of the second workshift on that day and the meeting was adjourned at approximately 2:30 p.m. The evidence indicated that the negotiations had not reached an impasse, but rather that they were considered "fluid."

At approximately 3:27 p.m. on October 18, 1965, the employer by public address system notified the first shift employees, whose workshift ended at 3:30 p.m., that the plant would not operate on October 19, 1965, second shift employees were notified of the discontinuance of operations. The employer representative testified that management had determined that a "labor dispute" existed at its establishment, and this was the reason given to employees for the discontinuance of plant operations beginning October 19, 1965.

At the time management determined to "close the plant," there was no work stoppage by employees, no overt actions by employees to curtail production by slow-down tactics, and the attendance of production and mainte-

nance employees had been normal during the weeks prior thereto. The record is conclusive in the facts that work was available and that production and maintenance employees had continued working regularly and were ready and available for work.

FINDINGS AND CONCLUSIONS: The Review Board finds that subsequent to July 6, 1965, Local 215, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America was certified as the exclusive bargaining agent for all production and maintenance employees of the employer herein.

It further finds that negotiations to establish a labor-management contract began on or about July 21, 1965.

It further finds that the negotiations, including those on October 18, 1965, were conducted in good faith by all parties concerned.

It further finds that negotiations, continued in a "fluid state" and that an impasse did not exist.

It further finds that good faith negotiations between labor and management do not in or of themselves constitute a "labor dispute."

It further finds that at approximately 2:30 p.m. on October 18, 1965, the employer advised those in attendance at a negotiating meeting that it was prepared to close the plant at the end of the workshifts on that day.

It further finds that the employer unilaterally determined that a "labor dispute" existed.

It further finds that at the time the plant was closed, there was and had been no overt actions by employees to stop work or slow down production.

It further finds that the record is devoid of any showing that the production and maintenance employees had in any manner indicated that they might discontinue working if the employer did not accede to their terms.

The Review Board concludes that, upon the showing in the record, claimants herein were unemployed from October 18, 1965, until November 1, 1965, through no fault of their own, within the meaning of the Indiana Employment Security Act.

DECISION: The decision of the referee is hereby reversed this 10th day of April, 1967. If otherwise eligible,

claimants are entitled to their benefit rights. The experience account of the employer is chargeable."

The appellant appeals from this decision and assigns as error that the decision is contrary to law.

It is urged that this is so because the evidence shows as a matter of law that the appellees are ineligible for waiting period or benefits under the Indiana Employment Security Act for the time in issue in this case because of a labor dispute at the factory where they were last employed by authority of Sec. 1504 of said Act.

The Act is as follows:

"An individual shall be ineligible for waiting period or benefit rights; for any week with respect to which an employee of the division, designated by the director and hereinafter referred to as the deputy, finds that his total or partial or part-total unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he was last employed; Provided, That this section shall not apply if it is shown to the satisfaction of the deputy that, he is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work; and he does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in or financing or directly interested in the dispute; and he has not voluntarily stopped working, other than at the direction of his employer, in sympathy with employees in some other establishment or factory in which a labor dispute is in progress; Provided, That if in any case separate branches of work which are commonly conducted in separate departments of the same premises, each such department unit shall, for the purposes of this section, be deemed to be a separate factory, establishment, or other premises; Provided, further, That the deputy may refer claims of individuals falling within the provisions of this section to a referee who shall make the initial determination with respect thereto, in accordance with the procedure in section 1803 (S. 52-1542b) hereof." Acts of 1947, Ch. 208, § 1504;

Amended Acts of 1953, Ch. 177, § 16; Burns' Indiana Statutes (1964 Repl.) ; Sec. 52-1504, 52-1539c.

Once a labor dispute has been established and there is a work stoppage resulting therefrom, the parties are ineligible for benefits. This rule is enunciated in *Adkins v. Indiana Employment Security Division* (1946), 117 Ind. App. 132, 70 N. E. 2d 31, which case is relied upon by the appellants for reversal of the case at bar. We point out that *Adkins* was a case where a labor dispute was found to exist by the Board and this court affirmed the decision of the Board.

In the case before us here the Board found that a labor dispute did not exist.

It is the law of this state that any decision of the Board shall be conclusive and binding as to all questions of fact. We are not at liberty to weigh the evidence and must accept the facts as found by the Board. These facts cannot be disregarded by us unless they are not sustained by any evidence of probative value. *White v. Review Board of Indiana, etc.* (1944), 114 Ind. App. 383, 52 N.E. 2d 500; *News Publishing Co. v. Verweire* (1943), 113 Ind. App. 451, 49 N. E. 2d 161; *Craddock Furniture Corp. v. Nation* (1944), 115 Ind. App. 62, 54 N. E. 2d 295, 55 N. E. 2d 121; *Youngstown S. & T. Company v. Review Board, Employment Security Division* (1954), 124 Ind. App. 273, 277, 278, 116 N.E. 2d 650; *Cecil Ross, et al v. Review Board, E. S. D.* (1962), 243 Ind. 61, 182 N. E. 2d 585.

The appellant carries the burden in this court of demonstrating that the decision of the Administrative Board is not upon substantial ground in order to gain a reversal.

Stripped of extended amplification, the issue here requires an interpretation of the term "labor dispute."

The facts show that negotiations were in progress at all times prior to the closing of the plant, between management and the certified bargaining agent of the employees. After several meetings between the negotiators, attempting to consummate a contract, the employer unilaterally decided that a labor dispute existed and closed the plant thus arriving at a "lock out" status. When this situation appeared the employees applied for benefits of unemployment payments and the Board found that they were entitled to the same because of a layoff and not a labor dispute and through no fault of their own.

We conclude that good faith negotiations between representtatives of management and labor, where the facts show that the bargaining is in a fluid state and no impasse has occurred, gives neither party the right to declare a labor dispute.

To hold otherwise would be to defeat the purpose of the law. Such an interpretation would defeat the objective of contract negotiation in all industries. To promote the general welfare, it is necessary and in the interest of public policy to encourage good faith collective bargaining at all times. If we were to interpret every difference of opinion between employer and employee as a labor dispute we can perceive a situation where no one could receive unemployment benefits and labor-management relations would be in chaos.

In the case before us the Board determined that good faith negotiations were in progress at all times and that a labor dispute did not exist. There was sufficient evidence of probative value to sustain such determination and we, therefore, sustain the decision.

Judgment affirmed.

Carson, C. J., Cooper and Faulconer, J. J., concur.

NOTE.—Reported in 237 N. E. 2d 597.