THE WILLIAMSON CO. *v.* REVIEW BOARD OF THE INDIANA EMPLOYMENT SECURITY DIVISION

[No. 968A165. Filed September 10, 1969. No petitions for rehearing or transfer filed.]

*Leland B. Cross, Jr., Ice Miller Donadio & Ryan,* of counsel, both of Indianapolis, and *William H. Anderson, Thomas A. Brennan, Graydon, Head & Ritchey,* of counsel, of Cincinnati, Ohio, for appellant.

*John J. Dillon,* Attorney General and *William E. Matheny,* Deputy Attorney General, for appellee, Review Board.

HOFFMAN, J.—This appeal comes to us from a decision of the Review Board of the Indiana Employment Security Division, in favor of appellee, Carl E. Fry, reversing the decision of the Liability Referee.

The operative facts are as follows:

Due to a decline in business, appellant-Williamson Company discontinued its night shift. Approximately 25 employees were laid off and the remaining employees were transferred to the day shift. As a consequence of the cut-back appellee-Fry was transferred from the night shift in the maintenance department to the service line on the day shift. Such transfer was made pursuant to the collective bargaining agreement then in effect which permitted the employer-appellant to use job experience first and then seniority as the basis for assignment of employees for job classifications.

A few minutes before 7:00 A.M. on November 13, 1967, appellee-Fry reported for work and protested his job assignment on the day shift. A meeting was held attended by claimant-appellee, Carl E. Fry, and by Leroy Liter, Supervisor of Final Assembly, Ralph Hord, Personnel Supervisor, and Donald Gassert, Plant Superintendent, all representing the appellant, for the purpose of attempting to resolve the problem raised by Mr. Fry relative to his job assignment. Mr. Fry reiterated his demand that he be given a different job. He pointed out that he had more seniority than two other men who had been transferred from the night shift but who had received better jobs. During this conversation Mr. Gassert told appellee-Fry that he would consider his request for a job transfer for a couple of days. At this point, Fry testified that, "After discussing this, I saw that I was getting no place. I was nervous and my stomach bothered me and I asked to go home because I didn't feel well."

Mr. Gassert testified that, "We were all upset, but he said

nothing about being sick. Or wanting to go home because he was sick." All three of the men present at the meeting on November 13, 1967, representing the appellant, testified that Fry had said nothing about being ill, or wanting to leave on account of illness.

Mr. Fry was told by Mr. Gassert that if he left the plant he would be terminated since there was work available. Nevertheless, appellee-Fry left the plant. Later that day, he returned to obtain separation papers and check. He told Mr. Hord, the supervisor filling out the papers, to be sure and note that he left because he was sick. Mr. Hord refused, maintaining that he never heard Fry state that he was ill. The following morning Fry returned to the plant and presented a note from a doctor which read, "Carl Fry has been seen with a presumptive diagnosis of peptic ulcer."

Thereafter, Fry's unemployment benefits were suspended pursuant to Acts 1947, ch. 208, § 1501, p. 673, as last amended by Acts 1967, ch. 310, § 19, p. 1162, § 52-1539, Burns' 1968 Cum. Supp., which provides, in pertinent part, as follows:

> "An individual shall be ineligible for waiting period or benefit rights: For the week in which he has left work voluntarily without good cause or has been discharged for misconduct in connection with his work, and for all weeks subsequent thereto until such individual has thereafter earned remuneration equal to not less than ten [10] times his weekly benefit amount in employment as defined in section 1508 [§ 52-1539g] hereof; Provided, however, That if such individual receives dismissal wages covering a period of time subsequent to such week the disqualification shall become effective at the end of such period."

Appellee-Fry commenced this action for review of the suspension of these benefits.

Section 52-1539, *supra*, contemplates two bases for disqualification: 1) Where the employee has voluntarily left work without good cause; and 2) where the employee has been discharged for misconduct in connection with his work.

Appellee-Fry's first hearing was before a Deputy of the Indiana Employment Security Division. On December 15, 1967, the Deputy filed his conclusion, as follows:

> *"The claimant was discharged for misconduct in connection with his work when he left the plant without the permission of the employer."* (Emphasis supplied.)

Fry timely requested a hearing before a Referee and subsequently such a hearing was held. After a hearing held on February 26, 1968, the Referee entered his summary and decision on March 1, 1968, as follows:

> "SUMMARY OF CASE: This is an appeal by the claimant for the determination that he was discharged as of November 13, 1967, for misconduct in connection with his work and for cause not attributable to the employer. Both parties appeared at the hearing.
>
> "The weight of the evidence supports the finding that the claimant left his job in the middle of the shift, following a transfer from maintenance to the service line on the paint booth paying $1.86 an hour, which was less than he formerly earned. It appears that the transfer and reduction were necessary due to a cutback in production.
>
> "In the absence of the claimant having immediate and definite prospects of securing more remunerative employment, *it is held that he quit without good cause.* Separation is not attributable to the employer. The claimant has failed to establish that his termination was due to union activities.
>
> "DECISION: The determination imposing a disqualification and wage credit cancellation is affirmed." (Emphasis supplied.)

Thereafter, appellee-Fry filed for an appeal to the Review Board. The appeal was granted and subsequently the Review Board entered its findings and conclusions and decision on August 1, 1968, as follows:

> "FINDINGS AND CONCLUSIONS: The Review Board finds that claimant was discharged from his employment on November 13, 1967, by the employer herein.
>
> "It further finds that claimant filed an initial claim for benefits on November 30, 1967.

"It further finds that the employer discontinued the night shift on which claimant worked in the maintenance department and assigned him to the day shift on the service line at a considerable reduction in hourly wage.

"It further finds that claimant thought he was entitled to a better paying job because of his three years' seniority.

"It further finds that claimant discussed this with management personnel prior to starting on the new job, November 13, 1967, and was told by the plant superintendent that he wanted some time to think about the matter.

"It further finds that claimant then stated he was ill and asked for permission to go home but was told he would be terminated is [if] he left.

"It further finds that claimant clocked out at 8:08 A.M. and later in the day saw his doctor who gave him a medical statement indicating he had a 'peptic ulcer.'

"It further finds that the evidence of record does not show that claimant violated any of the employer's rules.

"The Review Board concludes that the employer has failed in its burden of proof to show that claimant's actions on November 13, 1967, represented a wanton or wilful disregard for the employer's interests, was a deliberate violation of the employer's rules, or a wrongful intent on his part. ([*Massengale* v. *Review Bd., Emp. Sec. Div.,*] 120 Ind. App. 604 (1950), 94 N. E. 2d 673)

"It further concludes that claimant was discharged by the employer herein but not for misconduct in connection with his work within the meaning of § 1501 of the Act.

"DECISION: The decision of the referee, dated March 1, 1968, is hereby reversed this 31st day of July, 1968. It is held that claimant was discharged but not for misconduct in connection with his work. Claimant is entitled to benefits only to the extent he is able to work, available for work, making an independent effort to secure work and is otherwise qualified under the Act."

Appellant's sole assignment of error is that the decision of the Review Board is contrary to law. The assignment is based on two specifications: 1) That the decision is not supported by substantial evidence of probative value; and 2) that the dispute before the Review Board was improperly characterized as a conflict between discharge for misconduct

in connection with his work *or,* a voluntary quit without good cause.

We now turn to a consideration of appellant's first specification of error: That the decision is not supported by substantial evidence of probative value. To properly consider this specification, we deem it necessary to review the applicable legal standards for judicial review of administrative decisions.

The standards for judicial review of decisions of administrative tribunals apply uniformly to all administrative agencies, unless a different standard is required by statute. The Employment Security Act, Acts 1947, ch. 208, has no distinguishing standards and, thus, is subject to the recognized standards of this Court. (See: Acts 1947, ch. 208, § 1812, p. 673, as last amended by Acts 1957, ch. 299, § 6, p. 795, § 52-1542k, Burns' Indiana Anno. Stats.).

A rather basic premise of review is that this Court is not at liberty to weigh the evidence and that we must accept the facts as found by the particular Board involved. This premise applies to findings of the Review Board of the Indiana Employment Security Division. *Achenbach* v. *Review Bd. of Ind. Emp. Sec. Div.,* 242 Ind. 655, 660, 179 N. E. 2d 873 (1962); *Bootz Mfg. Co.* v. *Review Bd. of Ind. Emp. Sec. Div.,* 143 Ind. App. 17, 237 N. E. 2d 597, 601 (1968), (transfer denied).

However, there are several exceptions to this general rule. In *Warren* v. *Indiana Telephone Co.,* 217 Ind. 93, at pages 118-119, 26 N. E. 2d 399 (1940), Judge Shake, speaking for our Supreme Court, noted several of these exceptions:

"If, however, it should be made to appear that the evidence upon which the agency acted was devoid of probative value; that the quantum of legitimate evidence was so proportionately meagre as to lead to the conviction that the finding does not rest upon a rational basis; or that the result of the hearing must have been substantially influenced by improper considerations, the order will be set aside, not because incompetent evidence was admitted, but rather because the proof, taken as a whole, does not support the conclusion reached."

Two further exceptions were noted by Judge Arterburn, speaking for our Supreme Court in *Mann* v. *City of Terre Haute, et al.*, 240 Ind. 245, 249, 163 N. E. 2d 577 (1960) :

"This does not mean that the courts will review the administrative action of any board, commission or governmental corporation for the purpose of substituting its opinion or judgment for that of the board in discretionary matters within the jurisdiction of such an administrative body. The courts will, however, review the proceedings to determine whether procedural requirements have been followed and if there is any substantial evidence to support the finding and order of such a board. The courts will also review the proceedings to determine whether or not the order of the board, its judgment or finding, is fraudulent, unreasonable or arbitrary, if requested." (Citing authorities.) See also: *Pollock* v. *Studebaker Corporation*, 230 Ind. 622, 105 N. E. 2d 513 (1952) ; *Ken Schaefer Auto Auction, Inc.* v. *Tustison*, 136 Ind. App. 174, 198 N. E. 2d 873 (1964).

In *Nordhoff* v. *Rev. Bd. Ind. Emp. Sec. Div. et al.*, 129 Ind. App. 378, 383, 156 N. E. 2d 787 (1959), this Court, citing *Egbert* v. *Egbert, et al.*, 226 Ind. 346, 352, 80 N. E. 2d 104 (1948), noted that while, "The board . . . is not held to conformity to 'common law or statutory rules of evidence and other technical rules of procedure' (Burns' Sec. 52-1542e, 1951 Replacement) . . . we do not think such liberality bestows on the board the right to ignore competent evidence."

The *Nordhoff* case was reversed and remanded since it appeared that the Board had, in fact, ignored competent evidence.

Finally, this court has said, as an exception to the general rule, that if reasonable men would be bound to reach the opposite conclusion from the evidence in the record, the decision of the Board may be reversed. See: *Anderson Motor Serv., Inc.* v. *Review Bd. of Ind. E.S.D.*, 144 Ind. App. 537, 247 N. E. 2d 541 (1969) ; *Dormeyer Industries* v. *Review Board etc.*, 133 Ind. App. 500, 183 N. E. 2d 351 (1962) ; *Youngstown S. & T. Co.* v. *Rev. Bd., E.S.D.*, 124 Ind. App. 273, 116 N. E. 2d 650 (1954).

Each of these exceptions, if established by the appellant in a given case, can provide the basis for reversal of the decision of the Review Board. For purposes of clarification, we shall restate these exceptions:

The reviewing court may reverse the decision of the Review Board if:

(1)  The evidence on which the Review Board based its conclusion was devoid of probative value;

(2)  The quantum of legitimate evidence was so proportionately meager as to lead to the conviction that the finding does not rest upon a rational basis;

(3)  The result of the hearing before the Review Board was substantially influenced by improper considerations;

(4)  There was no substantial evidence supporting the conclusions of the Review Board;

(5)  The order of the Review Board, its judgment or finding, is fraudulent, unreasonable or arbitrary;

(6)  The Review Board ignored competent evidence;

(7)  Reasonable men would be bound to reach the opposite conclusion from the evidence in the record.

Appellant has chosen to specify as error three of the foregoing exceptions to the general rule: That the decision of the Review Board was not supported by 1) *substantial evidence* (number 4 above) of 2) *probative value* (number 1 above), and that 3) *reasonable men would be bound to reach the opposite conclusion* from the evidence in the record (number 7 above).

In *Vonville* v. *Dexter*, 118 Ind. App. 187, at page 208, 77 N. E. 2d 759 (1948) (transfer denied), this Court defined these two terms as follows:

"By substantial evidence we mean such relevant evidence as a reasonable mind might accept as sufficient to support a conclusion. *Consolidated Edison Company* v. *National Labor Relations Board* (1938), 305 U. S. 197, 229, 230, 59

Sup. Ct. 206, 83 L. Ed. 126, 140; 9 Wigmore on Evidence (3rd ed.) § 2494, p. 299. By probative value we mean evidence 'carrying quality of proof and having fitness to induce conviction.' *Carter* v. *Commonwealth* (1932), 245 Ky. 257, 53 S. W. 2d 521."

In view of these definitions, we shall examine the findings and conclusions of the Review Board and then examine the evidence supporting those findings and conclusions in order to determine if it is *substantial evidence* of *probative value.*

The three findings essential to the decision of the Review Board are the following:

"It further finds that claimant then stated he was ill and asked for permission to go home but was told he would be terminated is [if] he left.

"It further finds that claimant clocked out at 8:08 A.M. and later in the day saw his doctor who gave him a medical statement indicating he had a 'peptic ulcer.'

"It further finds that the evidence of record does not show that claimant violated any of the employer's rules."

For purposes of reference we shall refer to these findings as "A", "B" and "C", respectively.

Each of these findings must be measured by the standards of "substantial evidence", and "probative value" as defined in *Vonville* v. *Dexter, supra.*

A thorough review of the record before us discloses that Finding "A" is predicated solely on the unsupported testimony of appellee-Fry. It appears several times and in several contexts. In this particular case it is questionable whether such evidence clearly satisfies the test of *substantial evidence* of *probative value,* pursuant to the definitions set out above.

It is especially noteworthy to point out that the Liability Referee was the only one of the *quasi-judicial* officers in the administrative procedure relative to this action who actually took testimony from witnesses and, thus, was able to give weight to their credibility. The Review Board had before it only the transcript of the testimony taken by the Referee.

Finding "B" taken for face value tends to support Finding "A", in that it substantiates the claim of illness of appellee-Fry. The finding is that appellee had a peptic ulcer and that because of it he was too sick to work.

Substantial evidence of probative value in the record must support the finding.

First, appellee-Fry did not see a doctor until 7:00 P.M. on the date in question. He received no treatment. Secondly, the doctor gave him a note which merely read, "Carl Fry has been seen with a *presumptive* diagnosis of peptic ulcer." (Emphasis added.) This evidence could hardly be said to carry "quality of proof", *Vonville* v. *Dexter, supra,* and, in fact, is so ambiguous that it has little, if any, probative value. Since, by definition, substantial evidence must also be of probative value, the foregoing finding fails to meet either standard.

Finally, Finding "C" rests on the conclusion of the Review Board that appellee-Fry was, in fact, ill and left the plant for that reason. The failure of evidence of probative value leaves such a finding totally unsupported. In fact, Fry testified that he was advised by Mr. Gassert that if he left the plant he would be terminated.

Turning now to appellant's second specification of error, our review of the findings of the Review Board leads us to the conclusion that there is no merit in that specification. The Review Board was not bound to uphold the factual construction of the Referee or the Deputy. *Ogilvie* v. *Review Bd. of Ind. Emp. Sec. Div.,* 133 Ind. App. 664, 674-75, 184 N. E. 2d 817 (1962). In fact, the decision of the Review Board reflects its determination that *neither* statutory basis existed for declaring appellee-Fry ineligible for unemployment benefits.

The ninth paragraph of the findings of the Review Board states that appellant failed in its burden of proof to show that Fry's actions on November 13, 1967, "represented a wanton or wilful disregard for the employer's [appellant's] inter-

ests, was a deliberate violation of the employer's rules, or a wrongful intent on his part." The only basis in the record for such a conclusion results from the testimony of appellee-Fry to the effect that he claimed he was ill prior to leaving the plant.

It is true that the employer has the burden of proving that the employee has committed one of the foregoing offenses in order to justify the refusal to pay unemployment benefits under the statute. *A. Winer, Inc.* v. *Review Bd., Emp. Sec. Div.,* 120 Ind. App. 638, 641, 95 N. E. 2d 214 (1950). In the instant case the employer did, in fact, establish that employee-Fry had deliberately violated the rules by walking off the job in the middle of a shift without cause. In fact, Fry testified that he was advised by Mr. Gassert that if he left the plant he would be terminated. The employee then had the burden of rebutting the case made out by the employer by the introduction of competent evidence of probative value. As previously shown, appellee-Fry failed to sustain his burden by the introduction of competent evidence of probative value.

The Review Board cannot ignore competent evidence *Nordhoff* v. *Rev. Bd. Ind. Emp. Sec. Div., et al., supra.* The corollary is also true. The Review Board cannot rest its decision on incompetent evidence alone. While the Board is not held to conformity with the "common law or statutory rules of evidence", (Acts 1963, ch. 208, § 1, p. 275, § 52-1542e, Burns' 1964 Repl.), it is not unlimited in its discretion. *Warren* v. *Indiana Telephone Co., supra.*

From the evidence in the record before us, reasonable men would be bound to reach a different conclusion than that reached by the Review Board. *Anderson Motor Serv., Inc.* v. *Review Bd. of Ind. E.S.D.,* 144 Ind. App. 537, 247 N. E. 2d 541 (1969), *supra; Dormeyer Industries* v. *Review Board etc., supra,* 133 Ind. App. 500, 183 N. E. 2d 351 (1962) ; *Youngstown S. & T. Co.* v. *Rev. Bd., E.S.D., supra,* 124 Ind. App. 273, 116 N. E. 2d 650 (1954).

For the foregoing reasons, the decision of the Review Board is reversed.

Decision of Review Board reversed. Costs taxed to appellee, Review Board of the Indiana Employment Security Division.

Pfaff, C.J., and Sharp, J., concur. White, J., not participating.

NOTE.—Reported in 250 N. E. 2d 612.