275 N.E.2d 827 (1971)
Corydon D. ABBETT et al., Appellants,
v.
REVIEW BOARD OF THE INDIANA EMPLOYMENT SECURITY DIVISION ET AL., Appellees.
No. 471A84.
Appellate Court of Indiana, Division No. 1.
December 7, 1971.
Rehearing Denied January 27, 1972.
*828 Lynnville G. Miles, Forrest B. Bowman, Jr., Indianapolis, for appellants.
Theodore L. Sendak, Atty. Gen., Darrel K. Diamond, Deputy Atty. Gen., for appellee, Employment Security Div.
Donald C. Duck, James S. Haramy, Cadick, Burns, Duck & Neighbours, Indianapolis, for appellee, Herff Jones Co.
ROBERTSON, Judge.
This is a judicial review of a decision of the Review Board of the Indiana Employment Security Division, wherein it was held that the claimants-appellants were not entitled to benefits. The decision of the Review Board, omitting formal parts, reads as follows:
"STATEMENT OF FACTS: The record is in agreement that the collective bargaining agreement between the employer and the union had expired on June 15, 1970; that the claimants' attendance and work performance were normal at all times prior to June 29, 1970; that the employer scheduled the annual two-week vacation shutdown for the period beginning June 29, 1970, to July 13, 1970; that on July 13, 1970, the employer locked out the claimants; that on August 17, 1970, the employer terminated the lockout and recalled the claimants to work; that the claimants went on strike against the employer on August 17, 1970, and had not returned to work at the time of the referee hearing, August 28, 1970.

*829 "Negotiations on a new collective bargaining agreement began on May 5, 1970, and were held frequently until June 24 and 25, 1970, when the employer submitted its final proposal indicating that it was not soliciting a counter proposal and that a lockout was inevitable if no agreement was reached at this meeting. The union bargaining committee did not submit a counter offer but rejected the company's final proposal without presentation to the general membership and requested a meeting to be held on July 10, 1970. The vice-president of the union, a member of the union negotiating committee, testified that a strike vote had been taken by the union on or about June 12, 1970, authorizing the union bargaining committee to call a strike when, in its judgment, it was necessary.
"The employer advised the union negotiating committee on June 20, 1970, that if a stalemate were reached in negotiations prior to July 13, 1970, the end of the vacation shutdown, operations would not resume. The union refused to meet during the vacation shutdown and the first meeting after the vacation shutdown began was held July 10, 1970, when the employer's final offer was again refused by the union.
"FINDINGS AND CONCLUSIONS: The Review Board finds that the collective bargaining agreement between the employer herein and the union expired on June 15, 1970, and that there were good faith negotiation meetings from May 5, 1970, to and including June 24 and 25, 1970.
"It further finds that on or about June 12, 1970, the union bargaining committee was authorized by a strike vote to call a strike when, in the judgment of the committee, it was necessary.
"It further finds that on June 20, 1970, the employer advised the union negotiating committee that a lockout would be inevitable if an agreement was not reached by July 13, 1970, which was the end of the vacation shutdown that began on June 29, 1970.
"It further finds that after the June 24 and 25, 1970, meetings, the employer submitted its final proposal which was rejected by the union negotiating committee without submission to the general membership and no meetings were held until July 10, 1970, because the union negotiating committee refused to meet during the vacation shutdown.
"It further finds that neither party attempted to create an atmosphere in which a reasonable, foreseeable settlement of the disputed issues might be resolved and the lockout called by the employer was not a unilateral determination.
"It further finds that the fluidity of negotiations ended with the final offer of the employer and the refusal of the union negotiating committee to meet during the shutdown and the resulting lockout was the beginning of a labor dispute as defined by § 1504 of the Act.
"It further finds that all claimants herein were involved in said labor dispute beginning July 13, 1970, which continued to the date of the referee hearing August 28, 1970.
"The Board therefore concludes that the claimants herein are disqualified for benefits because they were participating in or interested in a labor dispute which began on July 13, 1970, at the establishment where they were last employed.
"DECISION: The decision of the referee is hereby affirmed this 23rd day of March, 1971."
The Review Board found claimants ineligible for benefits by reason of Section 1504 of the Indiana Employment Security Act which is set forth in IC XX-X-XX-X, Ind. Ann. Stat. § 52-1539c (Burns 1964). The portion of the statute pertinent to this appeal designates that an individual shall be ineligible for benefit rights if his "unemployment *830 is due to a stoppage of work which exists because of a labor dispute at the * * * premises at which he was last employed * * *."
Judicial interpretation of the phrase "labor dispute" in § 1504 of the statute, has resulted in the adoption by this Court of the test that a labor dispute exists where bargaining is not in a fluid state and an impasse has developed in negotiations. Bootz Mfg. Co. v. Rev. Bd. Emp. Sec. Div. et al. (1968), 143 Ind. App. 17, 237 N.E.2d 597; International Steel Co. v. Review Bd. of Ind. Emp. S.D. (1969), Ind. App., 252 N.E.2d 848; City Pattern & F. Co. v. Review Bd. of Ind. Emp. Sec. Div. (1970), Ind. App., 263 N.E.2d 218. In City Pattern & F. Co. v. Review Bd. supra, the "impasse" test was justified on the following basis:
"By holding that a `labor dispute' has not caused a work stoppage by lockout unless and until an impasse has developed, the labor dispute qualification of section 1504 (Burns § 52-1539c) is brought into harmony with the act's declared purpose."[1]
In applying the above stated test to the instant case, the Review Board found that a labor dispute did exist and thereby the referee's decision denying the claimants' benefit rights should be affirmed. On appeal, claimants' sole assignment of error is that the Review Board's decision is contrary to law. In determining whether or not the Review Board's decision is contrary to law, this Court is not at liberty to weigh the evidence and must accept the facts as found by the Board. Ross et al. v. Review Bd. of Ind. Emp. Sec. Div. (1962), 243 Ind. 61, 182 N.E.2d 585; Achenbach v. Review Bd. of Ind. Emp. Sec. Div. (1962), 242 Ind. 655, 179 N.E.2d 873; Bootz Mfg. Co. v. Review Bd. of Ind. Emp. Sec. Div. (1968), 143 Ind. App. 17, 237 N.E.2d 597.
There are, however, several exceptions to the above stated rule, which may provide the basis for reversal of the Review Board's decision. These exceptions were summarized in Williamson Co. v. Review Bd. of Indiana Emp. Sec. Div. (1969), Ind. App., 250 N.E.2d 612, 616, as follows:
"(1) The evidence on which the Review Board based its conclusion was devoid of probative value;
"(2) The quantum of legitimate evidence was so proportionately meager as to lead to the conviction that the finding does not rest upon a rational basis;
"(3) The result of the hearing before the Review Board was substantially influenced by improper considerations;
"(4) There was no substantial evidence supporting the conclusions of the Review Board;
"(5) The order of the Review Board, its judgment or finding, is fraudulent, unreasonable or arbitrary;
"(6) The Review Board ignored competent evidence;
"(7) Reasonable men would be bound to reach the opposite conclusion from the evidence in the record."
In support of their assigned error that the Review Board's decision is contrary to law, claimants, in the argument section of their brief, cite the Williamson exceptions Nos. 4, 5, 6 and 7.
Upon a careful examination of the record in this appeal, we cannot agree with claimants' contention based on the 4th Williamson exception that there was no substantial evidence supporting the conclusions of the Review Board. Particularly pertinent to this point is evidence in the record which reveals that on July 10th, the employer made a package proposal covering *831 the remaining 17 unresolved issues. This offer was designated by the employer as its final offer. The employer's final offer was rejected by the union, which, thereafter, submitted a counteroffer. The employer refused the counteroffer and resubmitted its final offer, with the suggestion that the union caucus to reconsider it. The employer's resubmitted final offer, and the suggestion that the union submit the employer's final offer to the union membership for a vote, were both rejected. After this point in the July 10th negotiating session, no further counter-proposals or concessions were made by the union or company. At the close of the meeting, the employer's representative stated that in his opinion an impasse had developed. The union failed to voice any disagreement to the employer's assessment of the status of the negotiations, nor were any proposals or statements made which would further the continuation of negotiations. It is our opinion that the foregoing evidence was of substantial weight and supported the Review Board's findings that "* * * neither party attempted to create an atmosphere in which a reasonable foreseeable settlement of the disputed issues might be resolved," and "* * * that the fluidity of negotiations ended with the final offer of the employer. * * *"
While claimants have stated that exception No. 5 (i.e., "The order of the Review Board, its judgment or finding, is fraudulent, unreasonable or arbitrary;") is applicable to the findings and conclusions in the Board's decision, we fail to find any further reference to this contention in claimants' appeal brief. Any argument, therefore, based on the Williamson exception No. 5, must be deemed waived.
Claimants' next contention of error is that the Review Board ignored competent evidence. In support of this contention, claimants state that the Review Board found "* * * that `good faith' negotiations ended on 25 June, 1970 * * *", when in fact there were good faith negotiations on July 10th. Claimants are correct in their statement that there were good faith negotiations on July 10th, however, they have misstated the Board's finding as to when good faith negotiations ended. An actual quotation of the Board's finding on this point reads: "* * * there were good faith negotiation meetings from May 5, 1970, to and including June 24 and 25, 1970." Thus, contrary to what the claimants would have us believe, the Board did not find that good faith negotiations ended on June 25th. The Board did, however, fail to make a finding as to whether or not there were good faith negotiations on July 10th. While such a finding would have more accurately reflected the facts of this case, we do not feel, in light of the correctness of the Board's other findings relevant to this point, that any error predicated on the Board's omission of a finding as to the status of negotiations on July 10th was reversible error.
Claimants' final contention of error under the Williamson exceptions is that reasonable men would be bound to reach the opposite conclusion from the evidence in the record. While we would agree that the evidence in the record presents a close question of law and thus reasonable men may reach the opposite result, we cannot state as a matter of law that reasonable men would be bound to reach the opposite conclusion.
For the foregoing reasons, we conclude that the Review Board's decision is not contrary to law, and is, therefore, affirmed.
SULLIVAN, P.J., and BUCHANAN and LOWDERMILK, JJ., concur.
NOTES
[1] The declared purpose of the Act is:

"* * * to provide for payment of benefits to persons unemployed through no fault of their own * * *."
IC 22-4-1-1, Ind. Ann. Stat. § 52-1525 (Burns 1964).