THE BENDIX CORPORATION *v.* RALPH H. RADECKI, AND REVIEW BOARD OF THE INDIANA EMPLOYMENT SECURITY DIVISION, WILLIAM H. SKINNER, CHAIRMAN, BETTY S. BARTEAU, AND JAMES M. ORGAN, AS MEMBERS OF AND AS CONSTITUTING THE REVIEW BOARD OF THE INDIANA EMPLOYMENT SECURITY DIVISION.

[No. 172A28. Filed October 31, 1973.]

*Michael J. Stepanek, Jr.,* of South Bend, for appellant.

*Theodore L. Sendak,* Attorney General, *Darrel K. Diamond, Deputy* Attorney General, for appellee, *Leo J. Lamberson,* for appellee Ralph H. Radecki.

WHITE, J.—The employer (Bendix) appeals from a Review Board decision affirming a referee's decision holding that "claimant [Radecki] was discharged, but not for proven industrial misconduct in connection with his work". We reverse and remand for an adequate finding of facts and a decision thereon consistent with this opinion.

Initially a deputy denied benefits to Radecki on the basis of the deputy's conclusion that Radecki "was discharged for admitted misconduct; the improper discharge of firearms is misconduct in connection with his work". When that decision was reversed by the Referee, Bendix appealed to the Review Board which issued the following Statement of Facts, Findings and Conclusions, and Decision:

> *"STATEMENT OF FACTS:* Claimant was a plant protection foreman[1] for this employer approximately two years prior to his discharge on May 26, 1970, for alleged misconduct. His work shift was from 11:06 P.M. until 7:24 A.M. and his duties include patroling both inside and outside the plant. On claimant's last workday, while making his rounds at approximately 12:30 A.M., he saw a flash and heard the report of a gun followed by a thud of a bullet hitting something. Claimant stated that the report came from a dark area but he did not see anyone; that he shot five times toward the direction of the shot he heard; that, in the past, three other persons had been shot at in this particular area; that plant rules permitted an employee in his capacity to carry a weapon and also to fire it in self-defense or in defense of another person. Claimant contends that the employer was prejudiced against him because of

---

1. Claimant-Radecki was a plant protection *patrolman,* not a "foreman". This mistake is apparently a phonetical error in transcribing dictation.

his Polish ancestry. He stated that he had never been reprimanded by the employer except for a 60-day disciplinary layoff after an incident which occurred on September 12, 1968.

"Employer witnesses attempted to prove that there was no shot fired as contended by the claimant and that he fired his gun indiscriminately. To establish this, the employer witnesses stated that no spent shells or footprints were found the following morning in the concerned area. An employer witness stated, however, that a mark in the wall where claimant had been standing may have been caused by a bullet. The employer further attempts to base claimant's discharge on a September 12, 1968, incident when claimant allegedly pointed a gun at another employee (a gun which claimant stated was without a trigger, firing pin, hammer, or cylinder for holding bullets) ; also on an incident in 1969 when claimant allegedly conspired to stage fake holdups of a coin machine; and on an incident concerning an alleged tampering with an A.D.T. (an electronic reporting system).

"There is no evidence that claimant had received a warning that his job was in jeopardy for the period immediately prior to his discharge or that he received disciplinary action of any kind for the alleged incidents, with the exception of the one on September 12, 1968.

"*FINDINGS AND CONCLUSIONS:* The Review Board finds that claimant was a plant protection foreman [sic] approximately two years for the employer herein prior to his discharge on May 26, 1970.

"It further finds that as said plant protection foreman [sic], he was permitted to carry a weapon and use it in defending himself and others.

"It further finds that during the course of claimant's employment on May 26, 1970, he fired five shots on the premises of the employer after a shot was fired at him.

"It further finds that the employer did not deny that other incidents of shots being fired at people had occurred in the past in this same area.

"It further finds that claimant's action in firing his weapon on May 26, 1970, cannot be considered unreasonable or indiscriminate under the circumstances shown herein and such action on his part was not a wanton or wilful disregard of the employer's best interests.

"It further finds no evidence in the record to show that claimant had ever received warnings, disciplinary action, or notice that his job was in jeopardy subsequent to the disciplinary action in September 1968.

"It further finds that the employer's contention that claimant had been involved in incidents where his conduct was unbecoming a plant protection foreman [sic] can be given no merit since no action by the employer was taken at the time said alleged infractions occurred.

"The Review Board concludes that the employer has failed in its burden to prove misconduct on the part of the claimant herein inasmuch as no warning had been given to claimant that his job was in jeopardy and the incident which resulted in his discharge was not a wanton or wilful violation of an employer rule or an act in disregard of the employer's best interests.

"*DECISION:* The decision of the referee is hereby affirmed this 9th day of December, 1971."

At the same time he claimed unemployment benefits Radecki also initiated grievance proceedings against Bendix through his union pursuant to its collective bargaining contract with Bendix. Those proceedings culminated in arbitration and an award by the arbitrator on September 24, 1970, (two months prior to the referee's decision) "that the Grievance herein considered must be disallowed and dismissed, and the termination of Ralph Radecki sustained in full."

Bendix's contentions and arguments by which it seeks to convince us that the Review Board's decision is contrary to law are many, but failure to make an adequate finding of facts is not one of them. However, our attention is attracted to the inadequacy of the findings by Bendix's related argument that the Board ignored competent evidence. The issues which involve the allegedly ignored evidence cannot be resolved on the findings now before us.

The necessity for findings of fact specific enough to enable a court intelligently to review its decisions appears to be well

recognized by the Review Board.[2] Reversals of the Board's decisions for failure to support them with adequate findings are quite rare. The failure in this instance appears to arise from the Board considering irrelevant certain issues we treat as relevant.

For the purposes of this opinion the issues before the Board are grouped and stated thus:

1. *The shooting incident.* Whether that incident which occurred on Radecki's last night of work constitutes "misconduct in connection with his work".[3]

2. *The prior incidents.* Whether Radecki, at times prior to his last night of work:

a. Pointed a gun at another employee in 1968.
b. Attempted to conspire with a vending company's collector to steal money from vending machines in Bendix's plant and/or to fake a robbery of the collector in 1969.
c. Tampered with the A.D.T. system so as to have caused a fellow guard to have failed to perform his duties in 1969.

And if any of these events occurred, whether it constituted misconduct in connection with his work.

3. *Collateral estoppel.* Whether claimant initiated grievance proceedings to contest his discharge; whether the grievance was arbitrated; and, if so, whether the decision of the arbitrator is binding on Radecki as to any issue of fact before the Board in the prosecution of Radecki's claim for unemployment benefits.

---

2. For the necessity that administrative decisions be supported by specific findings of fact, see *Carlton* v. *Board of Zoning Appeals* (1969), 252 Ind. 56, 245 N.E.2d 337, 16 Ind. Dec. 704; and *Transport Motor Express, Inc.* v. *Smith* (1972), 279 N.E.2d 262, 289 N.E.2d 737, 29 Ind. Dec. 417, 34 Ind. Dec. 42.

3. Acts 1967, Ch. 310, § 19, p. 1185, which was in effect when Radecki was discharged provides, *inter alia:*

"With respect to benefit periods established subsequent to July 1, 1967, . . . an individual shall be ineligible for any waiting period or benefit rights based upon wages earned from any employer whose employ he has left . . . or from which *he has been discharged for misconduct in connection with his work.* . . ." (Our emphasis.)

This section has since been amended but the language quoted remains. See Ind. Ann. Stat. § 52-1539 (Burns 1972 Supp.).

Bendix argues, in effect if not expressly, that it proved the "shooting incident" and the "prior incidents" in two ways: (1) by direct evidence, and (2) by proving a prior adjudication in its favor (i.e., by proving the arbitration and the award).

As to the first issue, the shooting incident, we are satisfied that the Board's findings of fact are adequate to sustain the conclusion that the specific facts proved by the direct evidence are insufficient to establish misconduct. But since none of the Board's findings make any mention of arbitration we can reach no conclusion *from the findings* as to the third issue, whether the arbitration award, by virtue of the doctrine of collateral estoppel, requires a different finding. The Board's findings do not tell us whether there was arbitration; if so, whether the arbitrator made any findings and/or decision; and, if so, what findings and/or decision he made.

As to issue two, "the prior incidents", the only clear finding made by the Board is that "no action by the employer was taken at the time said alleged infractions occurred". It is not clear whether the finding that there is "no evidence . . . [of] warning, disciplinary action, or notice that his job was in jeopardy subsequent to . . . September 1968" relates to the prior incidents, but it seems to. We could approve these findings as adequate only if we were to conclude that as a matter of law an employer must give warning, take discipinary action, or give an employee notice that his job is in jeopardy *at the time* the employee commits an act of the nature of the alleged prior incidents, *whether or not the employer knows of the alleged misconduct at the time it occurs*. (The Board made no finding as to when the employer learned of any of the prior incidents.)

And, of course, the same failure to find any facts whatsoever with respect to arbitration exists with respect to the prior incidents as with respect to the shooting incident.

We agree with Bendix that, as to the prior incidents, the

Board's findings are insufficient and its conclusions are contrary to law.[4]

The manner in which the Board treated the prior incidents suggests that it has misunderstood our reference to the absence of warnings in *Industrial Laundry* v. *Review Board* (1970), 147 Ind. App. 40, 258 N.E.2d 160, 21 Ind. Dec. 334. In *Industrial Laundry* employee's prior tardiness was not claimed as the reason for her discharge. The contention was that the employer's acceptance of her excuses rendered it incumbent on her to work overtime when asked. We noted that the absence of warnings could have been a reason for her to believe "that her supervisors considered her absences justified and that justifiable absences were her recognized right." Warnings in other cited cases, we observed, justified the inference that employees who persisted in being absent or tardy were guilty of wilful or wanton indifference to the best interest of the employer.

The facts found by the Board in the instant case are certainly insufficient to support the Board's conclusion that Bendix's failure to give warnings or take other action after the prior incidents has somehow robbed it of the right to rely on those incidents as grounds for Radecki's discharge. The character of the conduct alleged in those prior incidents is such that, if they occurred, wilful or wanton indifference to Bendix's best interest may be inferred, warning or no warning. On the other hand, if Bendix knew of these prior incidents before the shooting incident occurred yet failed to take any action, forgiveness, excuse, or condonation might well be inferred. And if that be the case, the forgiven misconduct perhaps should not be used to bolster an otherwise inadequate cause for discharge. No such facts have been found, however, nor do we know that the evidence would sustain such findings.

4. *Allis-Chalmers Manufacturing Co.* v. *Review Board* (1951), 121 Ind. App. 227, 98 N.E.2d 512.

Standing alone, the Board's failure to find any facts concerning Bendix's collateral estoppel defense would probably not be considered reversible error. Were it not necessary for us to reverse for other errors we could do as we did in *Fruehauf* v. *Review Board* (1971), 148 Ind. App. 627, 269 N.E.2d 184, 25 Ind. Dec. 373. There we searched the record to determine whether, in ignoring the alleged arbitration decision, the Board had ignored competent evidence.[5] We believe that if we did search the record herein we would probably find that it contains no evidence from which the Board could have found one or more, perhaps several, of the facts essential to a successful defense on the theory of collateral estoppel.[6] In that event there would be no possibility that the Board had reached the wrong result by ignoring evidence of the grievance arbitration.[7] But even though it is no invasion of the Board's exclusive fact finding domain for us to make a finding of "no evidence" on our own search of the record, it is better practice for the Board to make that finding itself. Among the advantages of such a practice is that it is notice to the losing party that the Board did consider the evidence which he offered in support of his theory of eligibility or ineligibility, as the case may be. Furthermore, it relieves the court of the burden of searching the record,

5. "The reviewing court may reverse the decision of the Review Board if . . . (6) The Review Board ignored competent evidence. . . ." *Williamson* v. *Review Board* (1969), 145 Ind. App. 266, 274, 250 N.E.2d 612, 18 Ind. Dec. 403.

6. We based this belief on what we find in the briefs and on our experience in *Fruehauf, supra*. We express this belief to make it clear that by directing the Board to make findings relative to the collateral estoppel defense we are not implying that the Board should sustain the defense. Conversely we are not suggesting what the Board's findings and conclusions should be nor are we implying that an arbitration decision never collaterally estops a claimant or an employer.

7. *Nordhoff* v. *Review Board* (1959), 129 Ind. App. 378, 156 N.E.2d 787, is the only Review Board case of which we are aware in which a cause was remanded for failure to consider competent evidence. That opinion makes it clear that the ignored evidence could have been the basis of a decision contrary to that which the board made.

which as it may, and in this case does, decline to do.[8] And finally, it insures that if we are called on to review the Board's decision there will be less possibility of our failing to understand why the Board made the decision it did and whether it followed the law (as we understand it) in so doing. In other words, we can more intelligently review any administrative decision when the board involved has made a specific finding of the facts relevant to every sincerely asserted theory of claim or defense which is seriously presented and is supported by evidence, albeit insufficient, as to one or more of its essential elements.

The Board should have made a finding of the facts relevant to Bendix's collateral estoppel defense and on remand it is expressly directed to do so.

The decision of the Review Board is reversed and the case is remanded to it for further proceedings, not inconsistent with the views expressed herein, which further proceedings may, at the Board's discretion, include the taking of further evidence.[9] The Board shall, in any event make an adequate finding of facts[10] on every issue before it and render the decision such findings require.

Buchanan, P.J. and Sullivan, J., concur.

NOTE.—Reported at 302 N.E.2d 847.

8. *Transport Motor Express, Inc.* v. *Smith, supra*, 289 N.E.2d at 745, 34 Ind. Dec. at 52, n. 10.

9. See *Burton* v. *Rock Road Construction Co.* (1969), 145 Ind. App. 683, 685, 252 N.E.2d 445; *McKinley* v. *Review Board* (1972), 154 Ind. App. 387, 290 N.E.2d 108, 111, 34 Ind. Dec. 137, 144.

10. In some cases a finding of facts will be "adequate" only when it includes a finding that as to one or more relevant questions of basic fact there is no evidence. *Transport Motor Express, Inc.* v. *Smith* (1972), 289 N.E.2d 737, 745, 34 Ind. Dec. 42, 52, n. 10.