GLADYS Y. GARDNER *v.* REVIEW BOARD OF THE INDIANA EMPLOYMENT SECURITY DIVISION AND INLAND STEEL COMPANY INDIANA HARBOR WORKS.

[No. 2-1073A233. Filed November 6, 1974.]

*Cletus H. Brault, Jr.,* Legal Aid Society of Gary, Inc., for appellant.

*Theodore L. Sendak,* Attorney General, *Wesley T. Wilson,* Deputy Attorney General, for appellee Review Board, *Palmer C. Singleton, Jr., Tinkham, Beckman, Kelly & Singleton,* of Hammond, for appellee Inland Steel Company.

SULLIVAN, P.J.—Appellant (Gardner) appeals from a negative award rendered in favor of appellee, Inland Steel Company (Inland). Gardner contends that her termination from employment was erroneously upheld by the Review Board in that she had medical reasons for her continued absence.

The pertinent facts are as follows:

Gardner was employed for approximately ten years by Inland, and, since January of 1972, was utilized as a duplicator machine operator. During the period January 1968 to July 1972, Gardner received one warning letter and two reprimand letters regarding tardiness; and two disciplinary actions, each involving one day off without pay.

On Thursday, January 4, 1973, Gardner left work early allegedly due to illness. On January 12, she received a discipline letter from Inland, dated January 8, setting forth her history of absenteeism and tardiness, and informing her that effective January 15, she would be paid only for the time actually worked. The letter, in part, stated:

"In the eleven (11) months, February through December, 1972, you have been absent a total of 37.5 days. This is an average of more than 3.4 days per month, or approximately four times the over-all average of all employees in C.O.P. [Gardner's department]. In addition to this absenteeism you have been late 28 of the 61 days that you worked during September through December, 1972. (This is the period during which we have been recording exact time because of the service bonus) The total time lost in these 28 late arrivals has amounted to 8.5 hours or more than 1 whole day."

Inland, on January 16, received a letter from Dr. Williams, Gardner's physician, stating that Gardner was unable to work and was receiving treatment for:

"I.  Acute Cephalagia, severe
    a. Migraine Equivolent [sic]
II.  Acute Anxiety RX
    a. Noxious gas. Inhalation PP'T. Irritation
    b. Employment Dyscrasia
    c. Somatic Nervousness"[1]

Inland, on January 30, contacted the Gary School System office, and was informed that Gardner had been teaching night

1.  These terms are defined as follows:
    "cephalagia. A pain in the head; the common headache.
    dyscrasia. An abnormal condition, especially an abnormal composition of the blood.
    somatic. Pertaining to the body. The word is used in two senses: pertaining to the body as distinguished from the mind, and pertaining to the body framework and walls as distinguished from the organs contained inside the body." Schmidt, *Attorney's Dictionary of Medicine* (1974).
    In Dorland, *The American Illustrated Medical Dictionary*, 21st ed. (1947), dyscrasia is defined as: "An old term that signified an abnormal composition of the blood and humors; a depraved state of the humors."

classes during the period of absence from Inland. It appears that Gardner concealed this fact from Inland. Gardner's testimony at the hearing revealed that she continued to teach these classes until March of 1973.

Gardner reported to Inland's medical department on February 5 with a post-dated statement, i.e., February 6, from Dr. Williams stating that Gardner was still receiving medical treatment for the same complaints. However, Dr. Williams, as per the statement, released Gardner to work effective February 6, but advised against utilizing her in the same department due to the machinery noise and noxious fumes.

By letter, dated February 13, 1973, Gardner was terminated. Her time cards reveal that she had not worked for Inland since January 4.

In May 1973, Gardner applied for benefits claiming "that she was discharged because of a personality clash with the supervisor." The initial determination held that Gardner was discharged for just cause, i.e., absenteeism, tardiness, and failure to return to work. This decision was reversed by the appeals referee following a testimonial hearing. The appeals referee found that the employer's evidence was hearsay in nature, and that therefore the employer did not offer competent evidence to show just cause for discharge. Inland appealed to the full Board, which reversed the appeal referee and issued the following findings and conclusions:

"FINDINGS AND CONCLUSIONS: The Review Board finds that claimant had been employed approximately 10 years and last worked as a duplicator operator in the employer's production control department on January 4, 1973; and that although claimant performed no further work after that date for the employer, her termination did not occur until she received a letter in the mail on February 13, 1973, advising her that she was discharged due to absenteeism and tardiness.

It further finds that claimant had been notified by registered letter on January 24, 1973, that the conditions described in her doctor's statement dated January 15, 1973, sent to the employer's medical department advising that she was being

treated for a general nervous condition and employment dyscrasia, did not qualify her for medical leave.

"It further finds that claimant had been disciplined and reprimanded for absenteeism previous to the incident leading to her discharge in this case.

It further finds that claimant failed to return to work after being notified that her condition did not qualify her for sick leave.

It further finds that claimant had been advised by letter dated January 8, 1973, after reporting off ill on January 4, 1973, that her absenteeism history was such that, effective January 15, 1973, she would only be paid for time she was present and worked on the job.

It further finds that claimant taught classes at the Gary Career School on January 9, 11, 16, 18, 23 and 30, 1973 from 6:30 to 9:30 P.M., while she was off sick from work with this employer, and that she did continue to receive pay from this employer to the date of January 13, 1973, while she was teaching at the Gary Career School.

It further finds that claimant admitted she received the employer's letter of January 24, 1973, advising her that her condition was not sufficient to warrant a sick leave of absence; and that she did not contact the employer or make an attempt to return to work thereafter.

The Review Board concludes that the evidence of record is sufficient to show that claimant did act against the best interests of this employer by her failure to return to work at any time after January 4, 1973, prior to the date of her discharge on February 13, 1973. It becomes particularly apparent that claimant's absence from work with this employer, notwithstanding any statement from her doctor, must be suspect especially when considering her own admission that she was able to teach for the Gary School System, received pay from this employer when working elsewhere, all while she was allegedly too ill to work for this employer. Considering all the evidence of probative value in the record, the Board must finally conclude that claimant was properly discharged for just cause in connection with her work on February 13, 1973, and that the statutory disqualification of Chapter 15-1 of the Act should be imposed.

DECISION: The decision of the referee in Case No. 73-A-1502 is hereby reversed this 13th day of September, 1973,

and the statutory disqualification of Chapter 15-1 of the Act is imposed.

REVIEW BOARD

/s/William H. Skinner, Chairman

/s/James M. Organ, Member

Norman K. Kassenbrock, Member, not participating."

Gardner appeals from the Board's decision.

In her Assignment of Errors, Gardner asserts that the Board's decision is contrary to law.. In her appeal brief, Gardner raises the following issues:

1. The Board erred in applying an erroneous standard because the Board must find that employee's conduct constituted wilful or wanton disregard for employer's interest.

2. The Board failed to make sufficient findings of fact to support its decision that Gardner was discharged for just cause because the Board found Gardner's absence merely "suspect".

3. The Board erred in making its finding that Gardner failed to contact Inland or attempt to return to work after the January 24 letter. Such finding, Gardner asserts, is unsupported by the evidence.

## I. REVIEW BOARD DID NOT APPLY
## ERRONEOUS STANDARD

Gardner contends that the Board's findings exhibit the application of an erroneous standard for judging the employee's conduct. In essence, Gardner argues that if the Board finds an employee's conduct was against an employer's best interests, such conduct must be "wilful or wanton" to constitute statutory misconduct.

In *Merkle* v. *Review Board* (1950), 120 Ind. App. 108, 90 N.E.2d 524, this court stated:

"It is our opinion that an employee who is a 'chronic absentee without notice and without permission' shows a wilful disregard of the employer's interests and if he is discharged by reason thereof he becomes ineligible for benefits during the week in which he was discharged and

the following five weeks in addition to the waiting period."
120 Ind. App. at 112. *See also, Thompson* v. *Hygrade Food Products Corp.* (1965), 137 Ind. App. 591, 210 N.E.2d 388; *A. Winer, Inc.* v. *Review Board* (1950), 120 Ind. App. 638, 95 N.E.2d 214.

In *White* v. *Review Board* (1972), 151 Ind. App. 426, 280 N.E.2d 64, this court, relying on *Tyler* v. *Review Board* (1956), 126 Ind. App. 223, 132 N.E.2d 154, held:

". . . that the mere failure on the part of the Review Board here to use in its Findings and Conclusions the words 'wanton and wilful' does not evidence the application of an erroneous standard for measurement of the employee's conduct." 280 N.E.2d at 66.

Therefore, Gardner's assertion in this regard is not cause for reversal.

## II. EVIDENCE SUPPORTS FINDINGS WHICH SUSTAIN BOARD'S DECISION

Gardner's issues (2) and (3) are interrelated and are combined for purposes of our treatment. In essence, Gardner contends that the Board's findings, and their underlying evidentiary basis, are insufficient to support the Board's conclusion that she was discharged for just cause. To synthesize the parties' contentions: Inland states that Gardner was terminated, after numerous warnings, for her January 4th to February 13th absences as well as her prior record of absenteeism and tardiness. Gardner argues that she had "good cause" for the January 4th to February 13th absences, i.e., her illness; and that the Board failed to find accordingly.

### A.

Gardner asserts that the evidence was insufficient to support the Board's conclusion that she did not have good cause for her absences.

It must be initially recognized that Gardner, after Inland produced substantial evidence of her chronic absenteeism and

failure to return to work, had the burden of establishing her illness as justification for absence from work. *Williamson Co.* v. *Review Board* (1969), 145 Ind. App. 266, 250 N.E.2d 612; *White* v. *Review Board, supra.* Further, it has been held that the existence of a health reason as good cause for voluntary termination is a fact question for the Board's determination. *Dawe* v. *Review Board* (1961), 132 Ind. App. 371, 177 N.E.2d 472; *Van Benthuysen* v. *Review Board* (1958), 128 Ind. App. 274, 147 N.E.2d 910. It is similarly a question of fact in determining the existence of cause for absenteeism which results in involuntary termination.

At the hearing, Gardner offered little evidence of probative value to establish her illness. Gardner submitted two medical statements; both from the same physician and identical in diagnosis. The second statement released Gardner to work although requesting a change in the work area.[2] However, Inland, in its letter of January 24, had previously advised Gardner that the conditions outlined in her physician's first statement did not qualify her for sick leave, and warned her that more severe steps would be taken if she did not return to work.[3]

In the factually similar case of *Anderson Motor Serv., Inc.* v. *Review Board* (1969), 144 Ind. App. 537, 247 N.E.2d 541, this court found:

"Although, as shown by Ford's attendance record, some of his absences were excusable for health reasons, there is an astonishing number of days in which Ford was absent or left work early, and no excuse whatsoever was given. It

---

2. Dr. Williams' statement of February 6, indicated that Gardner was unable to work in all areas of the steel plant. Williams further stated:

"Noise from machinery and fumes that emanate from the solution use [sic] in the machinery. Restrictions should be considerede. [sic] for at least 3 months until further notified."

3. It is beyond conjecture that Inland adequately warned Gardner of impending discharge as evidenced by the admonitions contained in its letters of January 8 and January 24. *See, Bendix Corp.* v. *Radecki* (1973), 158 Ind. App. 370, 302 N.E.2d 847; *Industrial Laundry* v. *Review Board* (1970), 147 Ind. App. 40, 258 N.E.2d 160.

is quite obvious that appellant's final discharge of Ford was not only because Ford was absent without excuse on the particular day which resulted in the ultimate discharge, but rather, the discharge was based upon Ford's many repeated absences over the past two years of employment for which no excuse was given despite appellant's repeated warnings."

In this regard, we are bound to accept the facts as found by the Board unless they are not sustained by evidence of probative value. *Thompson* v. *Hygrade Food Products Corp., supra; A. Winer, Inc.* v. *Review Board, supra.*

In the case at bar, the Board had before it the evidence of Gardner's medical excuse. It also had Gardner's application for compensation benefits which states that she considered her discharge to be due to a personality conflict. Finally, the Board received into evidence the fact that Gardner was employed by the Gary School System during and after the period of her alleged illness, and that she was apparently concealing the employment from Inland.

In sum, the evidence considered by the Board is sufficient to support its findings, and we will not disturb the Board's decision based upon those findings unless reasonable men would be bound to reach a contrary conclusion. *Thompson* v. *Hygrade Food Products Corp., supra.*

### B.

Gardner also attacks the sufficiency of the Board's findings in regard to her contention of illness as good cause for substantial absence.

It is generally held that the appellate court will reverse the Board only if the Board's findings are unsupported by sufficient evidence, *Dawe* v. *Review Board, supra;* or lack sufficient specificity, *Transport Motor Express, Inc.* v. *Smith* (1972), Ind. App., 289 N.E.2d 737, *modified on other grounds,* 261 Ind. 41, 311 N.E.2d 424.

The findings clearly disclose the Board's disbelief of Gardner's medical diagnosis as the effective cause of her absentee-

·ism. Further, the findings express the Board's cognizance of Gardner's history of chronic absenteeism, her employment with the Gary School System while remaining off work at Inland, and her failure to return to work after adequate warning from Inland.

The decision of the Review Board is hereby affirmed.

Buchanan and White, JJ., concur.

NOTE.—Reported at 318 N.E.2d 361.